22 U.S. 616 (1824)
9 Wheat. 616
The MONTE ALLEGRE, TENANT, Claimant.
Supreme Court of United States.
March 3, 1824.
March 16, 1824.
*618 Mr. Meredith, for the appellant.
Mr. D. Hoffman, for the respondents.
*640 Mr. Justice THOMPSON delivered the opinion of the Court, and after stating the case, proceeded as follows:
Upon the argument in this Court, the counsel for the respondent abandoned the objection to the jurisdiction of the Court. It becomes unnecessary, therefore, that we should notice that question.
In examining into the merits of the claim set up by the appellant, in his petition, it ought to be borne in mind, that the Monte Allegre and her cargo were illegally captured and brought within the United States, and that judgment of restitution *641 has been awarded in favour of the original owners. (7 Wheat. Rep. 520.) Granting the claim now set up, will be throwing upon the owners an additional sacrifice of their property, without any misconduct of theirs, but, on the contrary, growing out of the illegal and wrongful acts of others. Such a result, in order to receive the sanction of a Court of justice, ought to be called for by some plain and well settled principles of law or equity. It may be said that the appellant is not chargeable with any of the misconduct imputable to those who have occasioned the loss upon the Monte Allegre and her cargo. But when one of two innocent persons must suffer, he to whom is imputable negligence, or want of the employment of all the means within his reach to guard against the injury, must bear the loss.
The proceedings to obtain the order of sale of the tobacco, were without the knowledge or consent of the owners, and their property exposed to sale against their will. The appellant became the purchaser voluntarily, and with full opportunity of informing himself as to the state and condition of the tobacco he purchased. The loss, therefore, for which he now seeks indemnity, has come upon him by his own negligence.
Keeping in view these considerations, we proceed to an examination of the appellant's claim, which, if sustained, must be on the ground of fraud, or warranty, or some principles peculiar to admiralty jurisdiction, and unknown to the common law.
*642 If the appellant has sustained an injury, by a fraud not imputable in any manner to the appellee, it would be obviously unjust that he, or his property, should be made answerable for the damages. No part of the proof in the case affords the least countenance to the idea, that the appellee had any agency, directly or indirectly, in the sale of the tobacco; he, of course, cannot be chargeable with fraud, and this alone would be sufficient to reject any claim on this ground. But any allegation of fraud is not better supported against the Marshal or auctioneer. The petition does not allege directly, and in terms, fraudulent conduct in any one; but only states, that from the representations of the Marshal and auctioneer, the petitioner, and other purchasers, believed the tobacco to be sound and merchantable, and that under such belief he became a purchaser, at a fair price for sound and merchantable tobacco. Whether this allegation is sufficient to let in an inquiry at all upon the question of fraud, is unnecessary to examine, because, if sufficiently alleged, it is wholly unsupported by proof. No witness undertakes to say that the Marshal made any representations whatever respecting the tobacco; and the Marshal himself testifies that he was present at the sale, which was made by the auctioneer under his direction, and that he gave him no instructions, other than telling him it was public property, and was to be sold as it was, and by order of the Court. Nothing was, therefore, done by the Marshal, calculated to mislead or deceive purchasers. And the auctioneer testifies that he knew *643 the property was sold by order of the Court, and that he received from the Marshal no instructions other than to sell for cash; that there was no deception intended or practised in the sale. And that this was true, so far as respected himself, is fully confirmed by the fact, that the house of which he was a partner, after the sale, and before the shipment to Gibraltar, purchased one third of the tobacco from the appellant.
There is, therefore, no colour for charging any one with fraudulent conduct in the sale of the tobacco. And, indeed, this did not seem, on the argument, to be relied upon as a distinct and independent ground for relief, but only to be brought in aid of the claim, on the ground of warranty, which we proceed next to examine.
It was made a question on the argument, by the counsel for the appellee, whether the evidence in the case warranted the conclusion, that the tobacco, at the time of the sale, was in as deteriorated a state as it was found at Gibraltar? According to the view taken by the Court of the case, this inquiry becomes wholly unnecessary. It would be very reasonable to conclude, that if the tobacco was in a decaying condition at the time of sale, it would become more injured by lapse of time. But, were the inquiry necessary, the agreement of the counsel, filed the 18th of May, 1822, would seem to put that question at rest, for it is there expressly admitted, that the tobacco sustained no damage on the voyage.
In support of the claim, on the ground of warranty, it is said, this was a sale by sample, and *644 that all such sales carry with them a guaranty, that the article, in bulk, is of the same quality, in all respects, as the sample exhibited. If the rules of law which govern sales by sample, are at all applicable to this case, it becomes necessary to ascertain by whom the warranty is made. In private transactions, no difficulty on this head can arise. A merchant, who employs a broker to sell his goods, knows, or is presumed to know, the state and condition of the article he offers for sale; and if the nature or situation of the property is such that it cannot be conveniently examined in bulk, he has a right, and it is for the convenience of trade that he should be permitted, to select a portion, and exhibit it as a specimen or sample of the whole; and that he should be held responsible for the truth of such representation. The broker is his special agent for this purpose, and goes into the market, clothed with authority to bind his principal. In such cases, if the article does not correspond with the sample, the injured purchaser knows where to look for redress; and the owner is justly chargeable with the loss, as he was bound to know the condition of his own property, and to send out a fair sample, if he undertook to sell in that way.
But in judicial sales, like the present, there is no analogy whatever to such practice. The proceedings are, altogether, hostile to the owner of the goods sold, which are taken against his will, and exposed to sale without his consent. And it would be great injustice, to make him responsible for the quality of the goods thus taken from him. *645 Nor can the Marshal, or auctioneer, while acting within the scope of their authority, be considered, in any respect whatever, as warranting the property sold. The Marshal, from the nature of the transaction, must be ignorant of the particular state and condition of the property. He is the mere minister of the law, to execute the order of the Court; and a due discharge of his duty does not require more, than that he should give to purchasers a fair opportunity of examining, and informing themselves of the nature and condition of the property offered for sale. An auctioneer, in the ordinary discharge of his duty, is only an agent to sell; and in the present case, he acted only as the special agent of the Marshal, without any authority, express or implied, to go beyond the single act of selling the goods. And the Marshal, as an officer to execute the orders of the Court, has no authority, in his official character, to do any act that shall, expressly or impliedly, bind any one by warranty. If he steps out of his official duty, and does what the law has given him no authority to do, he may make himself personally responsible, and the injured party must look to him for redress. With that question, however, we have not, necessarily, any concern at present. But in that point of view, we see nothing in the present case, to justify the conclusion, that the Marshal went beyond what was strictly his official duty. This was not a sale by sample, according to the mercantile understanding of that practice, or the legal acceptation of the term. In such sales, the purchaser *646 trusts entirely to his warranty; and in general is not referred to, nor has he an opportunity of examining, the article in bulk; and, at all events, is not chargeable with negligence, if he omits to make the examination, which he has it in his power to do. Although most of the witnesses speak of the tobacco exhibited at the auction, as a sample, we must look at the whole transaction, and see what is the judgment of law upon it, and not be governed by what may be miscalled a sample. The Marshal denies that he ever authorized the auctioneer to sell by sample; he says he saw some seroons opened, but he supposed it was to show the description of property, or the species of goods offered for sale; that he never examined the tobacco himself, and knew nothing about it; that he never did sell by sample, and never conceived himself authorized so to do; and the auctioneer does not pretend to have had any authority or instructions from the Marshal to sell by sample. Whatever, therefore, from the testimony of the auctioneer, bears the appearance of a sale by sample, was of his own mere motion, and without authority; and if the appellant has been misled by any one, it must have been the auctioneer; and if he has exceeded his authority, so as to make himself personally responsible, redress, if at all to be had, must be from him alone; and in examining his testimony, it ought not to be lost sight of, that, after the sale, he became interested in the purchase, and probably looks to the event of this suit for indemnity for his own loss. But his testimony, when taken together, affords no just inference against *647 him. He states, that a part of the tobacco was stored at Fell's Point, a part on Smith's wharf, and from sixty to eighty seroons in the warehouse of himself and partner, which was so announced at the time of the sale; that fifteen or twenty seroons were taken into the street, out of which three or four were opened; as a sample of the whole parcel, by which the whole quantity was sold. But he also states, that the mode in which this tobacco was sold, is the usual and ordinary mode in which merchandise is generally sold at auction, when no specific directions to the contrary are given. This shows very satisfactorily, that he did not understand the sale to be by sample, in the legal sense of the term, so as to carry with it a warranty. For sales at auction, in the usual mode, are never understood to be accompanied by a warranty. Auctioneers are special agents, and have only authority to sell, and not to warrant, unless specially instructed so to do. Information was given to those who attended the auction, where the tobacco was stored, to give them an opportunity of examining it, if they were disposed to do it. Some who attended with a view of purchasing, did examine, and satisfied themselves that it was unsound. Not only that which was stored at a distance was found in this condition, but also that which was in the store house, where the auction was held, and under the immediate view of purchasers. The appellant had it, therefore, in his power, to obtain the same information with respect to the condition of the tobacco, if he had thought it worth while to give himself the trouble. So that *648 whatever loss he has sustained is attributable solely to his own negligence, without the fault or misconduct of any one; and the law will not, and ought not, to afford him redress. In sales of this description particularly, and generally in all judicial sales, the rule caveat emptor must necessarily apply, from the nature of the transaction; there being no one to whom recourse can be had for indemnity against any loss which may be sustained.
Is there, then, any thing peculiar in the powers of a Court of Admiralty that will authorize its interposition, or justify granting relief, to which a party is not entitled by the settled rules of the common law? We know of no such principle. Courts of Admiralty proceed, in many cases, in rem. But this does not alter the principles by which they are to be governed in the disposition of the res. It is true that the proceeds of the Monte Allegre and her cargo remain in the Circuit Court, and may be subject to the order of this Court, if a proper case was made out, which, in law or equity, fixed a charge upon this fund. These proceeds are in Court as the property of the original owners, and for distribution only. And if such owners would not be liable at law for the loss upon the tobacco, it is not perceived that any principles of justice or equity will throw such loss upon their property. The principle, if well founded, cannot depend upon the contingency, whether or not the proceeds shall happen to remain in Court until the defect in the article sold is discovered. If the proceeds are liable, they ought to be followed into the hands of the owner after distribution; and if *649 they cannot be reached, the remedy ought to be in personam. Such is the end to which the doctrine must inevitably lead, if well founded. But it is presumed no one would push it thus far.
There is no rule in Courts of equity to sanction what is now asked for on the part of the appellant. The case of Savile v. Savile, (1 P. Wms. 746.) is not at all analogous. The application there, was to compel the purchaser of certain property to complete his contract, he wishing to forfeit his deposit, and go no farther; and the question was, whether he should be compelled to go on and complete the contract: and the Court permitted him to forfeit the deposit, considering it a hard bargain, not fit to be executed. But, in the case before us, the contract was executed. Every thing respecting it had been consummated months before the discovery of the damaged condition of the tobacco. The property had been delivered, and the consideration money paid; and the bargain was as much beyond the control of the Court, as if the discovery of the defect had been made years afterwards. We are, therefore, brought back to the question, whether, in sales like the present, the rule caveat emptor is to be applied; and thinking, for the reasons already suggested, that it is, the decree of the Circuit Court, dismissing the petition, must be affirmed.
Decree affirmed.