January 28.
JUDGE CARR
delivered his opinion.
John Pate issued a Ca. Sa. against James Wright, which being executed, he delivered two negro men in discharge of his body. At the day of sale of these negroes, Read and Robertson, as trustees, exhibited a deed, by which these slaves were conveyed to them, to secure certain claims ; and though they did not forbid the sale, the Sheriff required indemnity. Pate gave it; the property was sold ; and the plaintiff was the purchaser. The trustees brought detinue against him, and had a recovery. The plaintiff paid the value assessed, with the damages, and files this bill for the recovery of this money, either from the Sheriff or his Deputy, or from Pate and his surety in the indemnifying bond. Wright, the debtor, is made no party; but it is stated that he is utterly insolvent.
It seemed admitted in the argument, that at common law, a Sheriff selling under exe *21 eution, with good faith, incurred no responsibility as to title : that there was no implied warranty ^raised by the law on such a sale. This, indeed, seems to be
clear. In the case of the Monte Alegre, 9 Wheat. 616, Thompson, J. delivering the opinion of the court, says, “generally in all judicial sales, the rule caveat emptor must apply, from the nature of the transaction, there being no one to whom recourse can be had for indemnity and though this is not, strictly speaking, a judicial sale, the reasoning applies. In 2 Bay’s Reports, 170, (a case which I have not had an opportunity of reading, but which is cited in the above case,) the Court decided, that at a Sheriff’s sale, caveat emptor is the best possible rule that can belaid down ; stating emphatically, that all who attend such sales ought to take care, and examine into the title : that no warranty, express or implied, can be raised on the part of the owner, as to whom the proceeding is compulsory, nor of the Sheriff’, who is the mere agent of the Court, nor of the Court itself. In 5 Serj. & Rawle, 225, Duncan J. delivering the opinion of the Court, says, that a sale by a Sheriff excludes all warranty. The purchaser takes all risk. Caveat emptor applies, with all its force, to him. The case cited in the argument from 5 Taunt. Rep. 675, Peto v. Blades, turned entirely on the fraud of the Sheriff in selling property as belonging to the debtor, and concealing the fact, well known to him, that the property was then in possession of the messenger of the assignees of bankrupt; and Ch. J. Gibbs says, if the action lies at all, it lies -upon the ground that the plaintiff has been deceived, and is the worse for the deceit.
It is clear, that upon the ground of fraud or deceit, no action would lie against the Sheriff, in the case before us ; for the plaintiff, in his bill, states, that when the sale of the slaves was about to take place, the deed of trust was exhibited The plaintiff then, when he bought, knew perfectly that he was buying property to which there was a claim, and he had the ground of the claim before his eyes. He knew, too, that the Sheriff refused to sell, until he was indemnified. Being thus forewarned, he can claim nothing *on the ground of deception It is stated, indeed, by the Sheriff in his return, and also, in his answer, that he sold nothing more than Wright’s interest in the slaves.
The counsel for the plaintiff acknowledged, that if this were in proof, the Court must consider the plaintiff as buying at his own risque, and, therefore, bound to stand by it ; but, he contended, that the return was no evidence, because no part of what the Sheriff is bound by law, to return ; and he cannot, by his return, make evidence for himself, or affect the rights of the parties. With respect to the answer, too, that (it was said.) was a substantive, affirmative fact, and must be proved as other facts.
Without canvassing the soundness of these objections, it seems to me clear, that the plaintiff did buy nothing more than Wright’s interest in the slaves, and knew well at the time, that he was doing so. The property was set up as Wright’s. A deed of trust, which he had given on this property, was brought forward and exhibited. All were told, (the plaintiff among others,) “Gentlemen, here is a lien.” I do not mean that these very words were addressed to them ; but, the exhibition of the deed proclaimed this in the strongest terms. The Sheriff, after this, selling the property, whether he declared it or not, sold only Wright’s interest ; that is, he sold them as Wright’s, subject to this lien. This state of things would, of necessity, operate strongly upon the price of the property. Every one would judge for himself. If he thought the deed fraudulent, or, that if fair, there was more property than would pay the debts it was bound for, he would be encouraged to bid something; and he would be regulated by his own judgment, weighing the price against the chances of losing the property. or part of it, under the lien. Under these circumstances, the plaintiff bought two negro men for $506 SO, which are said to be worth $800 or $900. He held them six years, the hire being worth, it is said, 150 dollars per annum ; and then, when the recovery was had, it was merely the price he had given, with interest on the *money ; and the defendant, Pate, offers, in his answer, to take the bargain off his hands, paying up both the sums which he has paid, with interest from the dates of the payments, and receive from him the slaves, with a reasonable hire. And, as the defendant might have been held to this offer, if the plaintiff had closed with it, we must suppose him serious in making it. Taking all these things into view ; that it is the settled law of the contract, that a Sheriff, dealing fairly, makes no warranty ; that the-sale was fair here, and the plaintiff purchased only Wright’s title, well knowing what that was ; that in consequence, he got the property for about half its worth, and his bargain was offered to be taken off his hands, placing him where he stood ; I think he has no right, either at law or in equity, to ask more of any body.
I do not, therefore, think that a case is made, which raises the question of substitution
JUDGE CO ALTER.
It seems to me that the points made in the argument of this case, as arising under the Act of Assembly, do not arise, and need not be decided.
In the first place, it may be remarked, that this case is not one in which property was levied by the Sheriff, at his own risque, on a Pi. Pa. against the goods. The execution levied was a Ca. Sa. and the debtor being taken, he delivered the slaves in discharge of his body, under the Act of Assembly, which provides, that a debtor in such case may tender to the Sheriff, property to the value of the debt and costs, which he shall receive and proceed to sell, in like manner as in case of goods taken on a Pi. Pa. But in this case, the law goes on further to provide, that if the property shall be under any lien or incumbrance, so that the whole cannot be sold, (by which I understand to be meant, that the whole title cannot de sold,) a new Ca. Sa. or Pi. Pa. shall issue for the balance ; and the Clerk of the *Court shall, on the return of the Sheriff of the insufficiency, or incumbrance, issue a a new Ca. Sa. or Pi. Pa. if required. But when such property shall have been under *22 incumbrance, the debtor shall not be at liberty to tender slaves, or personal estate, on a second Ca. Sa. being served.
According to the bill itself, this was a case in which, on a Ca. Sa. executed, the property tendered and received by the Sheriff, was under an incumbrance. It does not allege that any notice had been given to the creditor even of this incumbrance ; but states, that on the day of sale, the sale was forbidden by the trustees of the creditors ; so that this, at most, was a notification by the incumbrancers, of the incumbrance on the property, that purchasers might know that their purchase must be subject to it. It also alleges, that the Sheriff refusing to proceed, unless indemnified under the Act, the creditor gave bond and security, and the sale went on : that the appellant became the purchaser ; after which the trustees brought detinue against him, recovered judgment, which has been affirmed in this Court ; and he has paid the value and damages assessed. It appears that the value fixed on the slaves is precisely the same at which they were struck off to the appellant ; and that the interest on that sum was taken as the criterion of damages for detention. How these estimates, so advantageous to the appellant, could have taken place, without consent, does not appear, and it may be unnecessary even to conjecture.
How does the case stand on the proofs ? The record says that certain exhibits were filed, but by which party is not stated. One of them is a copy of the judgment in detinue, and is the only evidence of that allegation in the bill; of course it must have been filed by the appellant. The other is the copy of the execution and Sheriff’s return, and, except the statements in the answers as to that matter, is the only evidence of á sale of the slaves by the Sheriff. Without resorting to one or the other, or indeed to both of these, there is no proof of that allegation in the bill. Indeed, "the return does not prove a purchase by the appellant. Whether this exhibit was filed by the appellant or not, (though it 'may fairly be persumed to have been filed by him,) he must resort to it to prove that important allegation, or he must rely on the answers for that purpose ; and, in this latter case, must take them entire, at least so far as relates to this point. So too, if the return is relied on as to this matter, it must be taken entire, as the return of a sworn officer. Admit that he would not be bound to take it as true in all its parts, but might have contradicted that part of it which states that the debtor’s “right and property only was sold,” yet the bill neither suggests a falsehood in this part of the return, nor is there any proof that it is false, although both the answers aver the truth of it. This return then, if used by him as proof of a sale of the slaves, must be taken entire, and as true, until properly contradicted. But, this return neither proves that the appellant became the purchaser, nor that a bond was taken to indemnify the Sheriff ; nor is there any proof of these facts, except what is derived from the answers. These, also, if resorted to for this purpose, must be taken entire as to these matters. The Sheriff says that the sale was not forbidden in the usual way, and that no notice had been given to the creditor ; that the only way in which it was forbidden, was by an exhibition of the deed of trust on the day of sale ; and that even that was done at the instance of the appellant, who, it was understood, was one of thesureties in an injunction obtained by Wright to stop a sale under that deed ; that under these circumstances, and at the instance of Pate, the creditor in the execution, and also, he believes, at the instance of the appellant, he agreed to proceed with the sale, on being indemnified.
But, take the case as stated in the bill, what does it amount to but this? That slaves, not absolutely sold, but only incumbered, had been delivered in discharge of the debtor, who had been taken in execution ; and that on the day of sale, this incumbrance was made known. The "debtor, then, had the equity of redemption, which the Sheriff was perhaps bound, under the Act, to sell. The debtor, surely, could not.complain of this; and no objection to the sale was made by him. Pate, the creditor, might have stopped. He might have had the merits of this incumbrance investigated, and a sale finally made under it, if so decreed, so as to give him the balance, or get the whole, if he could set it aside ; but he was not bound to contest it. He might be satisfied of its justice, or that the property would sell, subject to it, for enough to satisfy his claim. He had a right to force the sale, and purchase in the property, subject to the incumbrance ; at least, if not objected to by the debtor, or any one else. He says, he attended for this purpose ; but the Sheriff having doubts, whether to proceed or not, he agreed to give bond, &c. The sale proceeded; he bid for the property, it being proclaimed that the debtor’s right in it alone was sold ; but the appellant outbid him, and became the purchaser. It seems, then, that this bond was given to quiet the Sheriff, and to induce him to do, what it would seem to me, under these circumstances, it was clearly his duty to do, if it had not been given. The return, then, simply shews, that the Sheriff proceeded to do what the law required. There being an incumbrance, he sold only the rights of the debtor, or his equity of redemption.
The sale then, not being forbidden in the usual way, and the bond not being given in the usual way, and the sale being only of the debtor’s interest, the trustees very properly brought their suit against the purchaser. The bond is not in the record, and would probably shew that it was not taken under the Act, as, it seems to me, it could not be. Be this as it ma y, the only proof in the cause, of a saleof the property, shews that the rights of the debtor only were sold. And then, more effectually to shew this, and still further to relieve the case of any doubt, Pate, the creditor, in his answer, offers to step into the shoes of the appellant.
"For these reasons, I think the decree must be affirmed.
The other Judges concurred in affirming the decree, audit was accordingly affirmed.