## TERRE HAUTE & L. RY. CO. v. HARRISON.

(Circuit Court of Appeals, Seventh Circuit. October 6, 1899.)

### No. 577.

1. RAILROADS—FORECLOSURE SALE—RIGHTS OF PURCHASER—LIENS.

The rule of caveat emptor, as applied to judicial sales, operates not only to deprive the purchaser of a railroad sold under foreclosure of any recourse against the proceeds of the property on account of existing incumbrances or tax liens on the property, but also of any claim to reimbursement for such liens from a fund in the registry of the court, or in the hands of a receiver, derived from the earnings of the property during the receivership, unless the decree, or order of sale, or special equitable considerations give him a right to such reimbursement.

2. SAME—LIENS ON PROPERTY.

A railroad in the hands of the receiver of a lessee was sold under foreclosure in November, and the purchaser was put in possession December 1st, up to which time the earnings were taken by the receiver. The sale was specifically made subject to all rights under a prior mortgage securing an issue of bonds, with accrued interest thereon since July 1st. Under the laws of the state the taxes on the property for that year became a lien on April 1st, but were not payable until January 1st following. During the receivership a special fund had been set aside by order of the court, representing the net earnings of the leased road, from which, under the terms of the lease, all taxes and the interest on both issues of the lessor's bonds were required to be paid by the lessee; and from time to time, by order of the court, the maturing interest and taxes had been paid by the receiver from such fund, in which a considerable sum remained at the time the leased property was sold. *Held*, that the purchaser was not entitled to payment, from such fund, of the interest on the first mortgage bonds, and the proportion of the year's taxes accruing prior to December 1st, as against the second bondholders, whose claims were not paid in full from the proceeds of the sale.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellant, the Terre Haute & Logansport Railway Company, is the purchaser at foreclosure sale, through Joshua Twing Brooks, of the property

of the Terre Haute & Logansport Railway Company, and as such intervenes in the proceedings for distribution of funds in the hands of the receiver, to procure payment out of a so-called "Logansport Fund" of five-sixths of an installment of interest on a prior mortgage and two-thirds of the taxes, which were liens against the property at date of sale, but became due after such date. The fund referred to was set apart by the order of court entered in the primary cause by which a receiver was appointed of this and other lines operated by the Indianapolis & Terre Haute Railroad Company, as hereinafter stated. The decree from which the appeal is brought was entered after confirmation of the sale under the foreclosure decree, and denies the application of the appellant for such payment of interest and taxes, and directs that the fund be paid over to the complainant, to be applied on the bonds and interest in suit, except the sum of $20,000, retained for further distribution, and the sum of $38,500, retained to await the result of this appeal.

The following are the material recitals and findings in the decree: "Comes now the complainant, by his solicitors, Miller & Elam; and the defendants, the Terre Haute & Indianapolis Railroad Company and the Terre Haute & Logansport Railway Company, come by their solicitor, S. O. Pickens, Esq. Comes also the receiver, Volney T. Malott, by John G. Williams, Esq., his solicitor. And the court having considered the petition of the complainant for distribution of a part of the moneys on hand in the Logansport fund and in the registry of the court to be applied in payment of the bonds and interest, and the court having also considered the answer of Terre Haute & Logansport Railway Company to said petition, and the prayer in said answer for the application of a portion of said moneys in the Logansport fund to the payment of two-thirds of the taxes on the property so sold under the decree of this court for the year 1898, when the same shall mature, and also a further portion of the same to the payment of five-sixths of the interest coupons maturing January 1, 1899, on the first mortgage bonds of said property, and the court having also considered the report of the receiver touching the subject-matter, as well as the record in this case, doth now find, order, and decree: First. The complainant is entitled, as between parties in this cause, to have the moneys remaining in said Logansport fund applied to the payment of the bonds and interest secured by the mortgage foreclosed, except that it is necessary that there be retained in the hands of the receiver of the moneys in said Logansport fund the sum of twenty thousand dollars until the further order of this court. Second. Neither said taxes for the year 1898, nor any part thereof, nor the interest accrued on said first mortgage bonds since July 1, 1898, nor any part thereof, are prior in equity to the bonds and interest of the complainant, but the purchaser of the property sold therein took the same subject to and charged with the payment of said taxes and interest on said first mortgage bonds, and the defendant Terre Haute & Logansport Railway Company is not entitled to have any part of said interest or taxes paid or provided for out of the moneys in said Logansport fund. Third. The complainant is entitled to have presently paid over to him for application to the payment of said bonds and interest all of the moneys in said Logansport fund except said sum of twenty thousand dollars, and is also entitled to have presently paid over to him all moneys derived from the sale of said property in the registry of the court after the costs, expenses, etc., and after deducting the amount necessary to pay the proper pro rata on the five bonds not in the hands of the bondholders' committee."

The facts and proceedings upon which the claims rest are substantially as follows: On November 1, 1879, the Terre Haute & Logansport Railway Company, owning a line extending between Rockville and Logansport, and having a leased line from Rockville to Terre Haute, executed a mortgage to Benjamin Harrison, trustee, to secure bonds to the amount of $500,000, which constituted a first lien upon all its property. On November 22, 1879, it entered into a contract of lease to the Terre Haute & Indianapolis Railroad Company for a term of 99 years, under which the latter company entered into possession of the lines and property. The contract provided that the lessee company was to operate the lines, "and, after retaining seventy-five per cent. of the gross receipts from all traffic moved over said line or business done thereon" for its own use, it would "appropriate the remaining 25 per cent. as follows,

to wit: First. To the payment of taxes assessed against the property held and operated under this contract. Second. To the payment of the interest as it falls due on the first mortgage bonds of said party of the second part, being an issue of bonds to the amount of five hundred thousand dollars, bearing interest at the rate of six (6) per centum per annum, payable on the 1st day of January, A. D. 1910, and secured by a deed of trust, conveying to Benjamin Harrison, of Indianapolis, Indiana, as trustee, the line of railroad and property of the party of the first part hereinbefore described. Third. To the payment of rental accruing to the Evansville & Terre Haute Company for the use of its said line of railroad extending from Terre Haute, Indiana, to Rockville, Indiana. Fourth. The surplus, if any, to be paid annually to said party of the first part." And it was further stipulated that, in the event the 25 per cent. so appropriated proved "insufficient to pay the taxes, interest, and rental aforesaid, and proper cost of maintaining the corporate organization" of the lessor company, the deficit should be advanced by the lessee company to make such payments, and the amount so advanced become a charge to be repaid by the lessor. Subsequently it was determined to build an extension of the railroad to South Bend, and for that purpose the lessor company, on January 1, 1883, made a further mortgage, or so-called "extension mortgage," to the same trustee, to secure bonds to the amount of $1,000,000, which constituted a first mortgage on the extended portion and a second mortgage on the pre-existing property. On June 21, 1883, a new lease was entered into with the Terre Haute & Indianapolis Company, which included the extension, with like provision as above recited, except that interest on the bonds secured by this "extension mortgage" was made an additional charge upon the 25 per cent. of gross earnings, and to be advanced by the lessee in case of deficit. The lessee company further guarantied the payment of principal and interest by an indorsement on the bonds respectively secured by each mortgage. The terms of this lease and of the first lease above mentioned are set forth in the report of Railroad Co. v. Harrison, 60 U. S. App. 265, 32 C. C. A. 130, and 88 Fed. 913.

The Terre Haute & Indianapolis Railroad Company became involved in operating leases respecting other lines as well, and in November, 1896, a bill was exhibited against it by Mark T. Cox and others, in the court below, for specific performance of a lease made with the Terre Haute & Peoria Railroad Company; and on November 13, 1896, Volney T. Malott was appointed receiver of all the lines owned or leased by the defendant company. The order provided that the receiver should "keep separate and distinct accounts showing the amounts of the gross earnings derived from the operation" of each of the leased lines, and, among other provisions, that "twenty-five per cent. of the gross earnings derived from the operation of the Terre Haute & Logansport Railroad Company" be "set apart and held by the receiver as a separate and distinct fund," in separate bank account, specially designated to indicate the property from which it was derived, "and that no part of said percentages so set apart and deposited be paid out or applied except on the special order of the court," made upon notice to all parties appearing in the cause. The property of the Terre Haute & Logansport Railroad Company being thus in the custody of the court, the appellee, on leave of the court, filed his bill of complaint on December 30, 1896. As originally framed, it sought to enforce the liability of the Terre Haute & Indianapolis Company under the lease and guaranty, but that claim was withdrawn, and by amendment the bill was made one for foreclosure of the second or "extension mortgage" for default in payment of interest. On July 22, 1897, a decree of foreclosure and sale was entered, which was affirmed on appeal. Railroad Co. v. Harrison, supra. In the decree it was provided: "That this decree and sale are made without prejudice to, and with the full reservation of, the rights and interests of Benjamin Harrison, as trustee, in and of all holders of bonds and coupons under the said mortgage executed by said Terre Haute & Logansport Railroad Company to Benjamin Harrison, trustee, of date November 1, 1879." Before the sale, on September 26, 1898, on petition filed by appellee, an order was entered by the court, which reads as follows: "And comes also the receiver, Volney T. Malott, in charge of the property covered by the mortgage, which is the subject-matter of this suit, by John G. Williams, his solicitor,

and comes also the Terre Haute & Indianapolis Railroad Company, by S. O. Pickens. its solicitor, and it appearing to the court that a question has arisen whether the fund in the hands of the receiver known as the 'Logansport Fund' would pass to the purchaser at the foreclosure sale under the decree herein: Now, therefore, to avoid any such question, it is by the court ordered that said fund shall not so pass, but shall be reserved and held by the receiver for disposition under the orders of the court, first, to discharge any liabilities against the same which may be adjudged prior in equity to the bonds and interest; the balance to go, in case of a deficiency in the proceeds of the sale, to pay the bonds and interest in full, to liquidate such deficiency, or, if there is no such deficiency, then said fund, or so much thereof as may remain, to be paid to the party next in equity under the order of the court. And the master is directed to read this order in connection with the notice of sale before receiving any bids at the foreclosure sale." And the notice of sale by the master states as follows: "Provided, that said sale of said property shall be made without prejudice to, and with the full reservation of, the rights and interests of Benjamin Harrison, as trustee, in and of all holders of bonds and coupons under a certain other and older mortgage upon said property, or a portion thereof, by the said Terre Haute & Logansport Railroad Company to Benjamin Harrison, trustee, bearing date November 1, 1879, as security for the payment of bonds of said company to the amount of $500,-000, with the unpaid interest thereon at six per cent. per annum since July 1, 1898; said last-recited mortgage being set out in full in the bill of complaint in said suit." On November 18, 1898, the property was sold for $1,060,-000 to Joshua Twing Brooks, his bid for that amount exceeding the offer by the bondholders' committee. The purchase was completed on November 28, 1898, and deed executed to the appellant, in accordance with the purchaser's direction, December 1, 1898. An order confirming the sale was thereupon entered, and possession of the property was delivered to the appellant, dating from midnight, November 30, 1898.

The Logansport fund in the hands of the receiver amounted approximately to the sum of $137,000 at the date of sale, and the interest which had accrued on the first mortgage up to July 1, 1898, and the taxes for the years 1896 and 1897 had been previously discharged by the receiver out of such fund, pursuant to orders of the court. The unpaid charges in question are: (1) Interest from July 1, 1898, on such prior mortgage, of which an installment of $15,000 became due January 1, 1899; and (2) the taxes for 1898,—about $38,000,—assessed pursuant to the statute of Indiana, by which a lien was declared from April 1, 1898, but the provision for collection directed that the tax roll, be delivered for that purpose to the treasurer "on or before the last day of December in each year." On December 5, 1898, the appellee filed his petition for application of such fund upon the deficiency remaining on the foreclosed bonds and mortgage, and the appellant obtained leave to be made a party defendant, and answered therein, and on the hearing the decree was entered from which appeal is brought.

Samuel O. Pickens and Laurence Maxwell, for appellant.

W. H. H. Miller, for appellee.

Before BROWN, Circuit Justice, JENKINS, Circuit Judge, and SEAMAN, District Judge.

SEAMAN, District Judge, after the foregoing statement, delivered the opinion of the court.

The general doctrine is well settled that there is no warranty in judicial sales; that the maxim caveat emptor applies, and the purchaser takes the property without recourse for tax liens or other incumbrances or defects in the title. The Monte Allegre, 9 Wheat. 616, 648; Osterberg v. Trust Co., 93 U. S. 424, 428; U. S. v. Duncan, 4 McLean, 607, Fed. Cas. No. 15,003; Fidelity Insurance, Trust & Safe-Deposit Co. v. Roanoke Iron Co., 84 Fed. 744; Ror. Jud. Sales,

§§ 458, 459. In the argument of counsel on behalf of the appellant this rule is recognized, but with the assertion that it operates only to forbid the purchaser "from asking that prior liens be paid out of the proceeds of the property sold." No authority is cited for so limiting its effect, and we are of opinion that the rule applies with equal force to any fund which is in the registry of the court or in the hands of the receiver as the earnings or other production of the property involved. Exception to this general rule undoubtedly arises in equity in the following instances: First, where the decree or order for the sale expressly provides for discharging liens or other claims against the property out of the proceeds or other funds coming into court, or where the proceedings or provisions are otherwise inconsistent with such rule; and, second, where there is fraud, concealment, or unfair dealing in the proceedings which entitle the purchaser to equitable relief.

The claims in controversy are: (1) For current interest accruing on the prior mortgage, to which the sale was subjected; and (2) for taxes assessed against the property sold for the year 1898, concurrent with the sale. Neither interest installment nor taxes was due and payable when the sale was perfected and possession passed to the purchaser, and both claims are clearly barred by the rule stated, unless circumstances are shown which create an exception, either on one of the grounds above mentioned or within well-recognized principles of equity. Are sufficient grounds presented in this case to exempt the purchaser from such rule through the several orders of court, receivership, or pre-existing leases? The contention is, on behalf of the appellant, that the Logansport fund stands in the registry of the court as a special fund which was set apart and dedicated for the payment primarily of the charges in question, both by the leases made by the mortgagor company and by the orders of the court entered in the course of the proceedings; and that the order of September 26, 1898, made pending the sale, not only reserved the fund from passing to the purchaser, but was, in effect, an assurance to him that it should be applied in liquidation of these charges. Manifestly, the last-mentioned order bears no such interpretation when considered alone. It recites "that a question has arisen whether the fund in the hands of the receiver, known as the 'Logansport Fund,' would pass to the purchaser at the foreclosure sale under the decree," and then provides:

"Now, therefore, to avoid any such question, it is by the court ordered that said fund shall not so pass, but shall be reserved and held by the receiver for disposition under the orders of the court, first, to discharge any liabilities against the same which may be adjudged prior in equity to the bonds and interest; the balance to go, in case of deficiency in the proceeds of the sale, to pay the bonds and interest in full, to liquidate such deficiency, or, if there is no such deficiency, then said fund, or so much thereof as may remain, to be paid to the party next in equity under the order of the court. And the master is directed to read this order in connection with the notice of sale before receiving any bids at the foreclosure sale."

That liens were accruing for current taxes and for interest on the prior mortgage were patent facts, presumably within the knowledge of all parties in interest; but neither item is so referred to in

the petition for the order, nor named in the order. No claim is made that payment of either out of the fund was suggested or otherwise assured at the sale or in negotiations leading up to it; and respecting the interest the notice of sale informs the purchaser that it will be made subject to the first mortgage, "with the unpaid interest thereon at six per cent. per annum since July 1, 1898." The ground for equitable relief must appear, therefore, in the previous orders or transactions, and the appellant's claim in that regard is thus stated in the argument of counsel: The purchaser "was distinctly advised by the order of September 26, 1898, that there was a fund in court which would be applied to discharge any liabilities against the same which might be adjudged prior in equity to the extension mortgage bonds; and he was also advised by the former orders of the court that taxes and interest on the first mortgage bonds had always been recognized and enforced as claims on that fund 'prior in equity' to the extension mortgage bonds." It is true that the primary order of the court appointing the receiver of the several lines of railroad distinctly provided that separate accounts should be kept by him "of the gross earnings derived from the operation" of each, and that the specified percentages of such earnings be "set apart and held by the receiver as a separate and distinct fund," to be paid out or applied only on special orders of the court; and that the earnings derived from the lines of the mortgagor company in question were so separated, and 25 per cent. thereof set apart as directed by said order, and constitutes the Logansport fund. And it is equally true that taxes and interest on the first mortgage were paid out of such fund from time to time as each accrued, upon further orders of the court. On these premises, however, no equity can be founded in favor of the purchaser at the sale to reimburse him for the payment of such liens which accrued against the property after the sale. The fund was thus set apart by the primary order from the gross earnings of the road, on the assumption that it represented their net product after meeting the expenses of operation, and its status as earnings was distinctly preserved to enable the court to make final disposition when the rights of the parties were ascertained. For the purposes of the order, the ratio adopted was the same fixed in the operating leases, but there was clearly no ratification or adoption of the leases or any of their covenants. The Logansport fund, therefore, was exclusively net earnings derived from the operation of the property by the receiver, and the general rule in such cases required its application to pay both taxes and interest on the prior mortgage as they accrued in the course of the receivership. The subsequent orders so directing payments to be made were usual in character, and have no bearing beyond the general rule referred to; and no order or course of action which appears in the record in terms or in purpose supports either view for which the appellant contends, namely, that they import (1) an adoption of the leases, or (2) an assurance to the purchaser that liens not accrued would finally be paid out of the fund, or declare (3) such liens to be "prior in equity" to the second mortgage. Nor can the claim be founded on

the provision in the pre-existing leases for payment of taxes and interest by the lessee during the term of the lessor's share of the gross earnings. Aside from the view above indicated that these leases were not adopted by the action of the court, and were, in effect, displaced by the receivership, the appellant obtained no interest in such leases through the purchase at foreclosure sale to authorize their enforcement for its benefit; and, however effective the covenants may be, either between the parties, or in favor of mortgagees for interest, or of the public for taxes, they cannot operate to relieve the appellant from a burden which is imposed by law upon the purchaser at judicial sale.

It then remains to ascertain whether an equity in the fund is otherwise established in favor of the purchaser through the nature of the liens and their inception during the possession by the receiver. The sale was made November 18, 1898, was duly confirmed, and possession was delivered to the appellant, taking effect from midnight, November 30th. The last installment of interest on the first mortgage bonds matured July 1, 1898, and was duly paid by the receiver; and the next installment—being the one in controversy—was not payable at the date of sale, but fell due January 1, 1899, one month after title and possession were acquired by the purchaser. The taxes in question were assessed for the year 1898, and, although the statute of Indiana declared the taxes to constitute a lien against the property from April 1st, it further provided (section 8566, Burns' Rev. St. 1894; section 6415, Horner's Rev. St. 1897) for delivery of the tax roll or "duplicate" to the treasurer for collection "on or before the last day of December in each year"; and it is asserted, and not disputed, that the practice is uniform thereunder for collections to commence after the ensuing 1st of January and extend until March or April. No proof is offered as to the time of delivery for collection in this instance, and it cannot be presumed that delivery was before the sale, but rather that the taxes became actually payable a month later, as contemplated by the statute. On this state of facts the ruling in Osterberg v. Trust Co., 93 U. S. 424, 428, is controlling. There the purchaser applied for relief from the payment of taxes under the following circumstances: Railroad property in the state of Illinois was in the hands of a receiver, and sold on mortgage foreclosure August 16, 1875. By the statute of Illinois the taxes for the year 1875 attached as a lien from May 1, 1875, but the warrants for collection were not to be delivered until "within the first ten days of December." The amount of his bid was not entirely paid by the purchaser until April 1, 1876, and the sale was not completed and confirmed until May 27, 1876. Meantime, up to December 9th, when the purchaser was let into possession under a provisional order of the court, the receiver retained possession, and had the earnings of the road, as directed by the order of the court. But the fact that the judicial sale antedated the maturing of the tax claim was held to conclude the purchaser, and the postponement of final payment of the purchase money and of actual transfer of title and possession until after the taxes fell due, even in conjunction with retention by the receiver of all the

96 F.—58

earnings during the interim,—all being at the instance of the purchaser,—were ineffectual to relieve the purchaser from payment of the taxes so accruing after the bid was received. Of the tax lien it is there held:

"The taxes for 1875 were, at the date of the decree, a subsisting lien upon the mortgaged property, and he [the purchaser] had not only constructive, but actual, notice of its existence. It is true that the title of a purchaser at a judicial sale under a decree of foreclosure takes effect by relation to the date of the mortgage, and defeats any subsequent lien or incumbrance. A lien for taxes does not, however, stand upon the footing of an ordinary incumbrance, and is not displaced by a sale under a pre-existing judgment or decree, unless otherwise directed by statute. It attaches to the res without regard to the individual ownership, and when it is enforced by sale pursuant to the statute prescribing the mode of assessing and collecting them the purchaser takes a valid and unimpeachable title. But if the doctrine were otherwise, and if the doctrine of caveat emptor had no application to this case, we are not aware of any principle which would justify withholding from the mortgagee any of the moneys derived from the sale of the mortgaged property with a view to the application of them to satisfy such lien. This is not a controversy between incumbrancers."

And in reference to the purchaser's claim of an equity in the earnings thus coming to the hands of the receiver it is further said:

"He has no rightful claim to any part of the earnings of the road whilst it remained in the possession of the receiver, nor is he in a position to question the orders of the court as to the application of those earnings."

That case distinctly rules against the appellant's claim for the taxes of 1898, and the doctrine there stated is equally applicable to the lien for interest. We are of opinion that no equity appears for paying either claim out of the Logansport fund, and the decree accordingly is affirmed.