## AMERICAN PRESS ASS'N v. DAILY STORY PUB. CO.*

(Circuit Court of Appeals, Seventh Circuit. October 31, 1902.)

### No. 864.

1. COPYRIGHT—LOSS OF RIGHT TO PROTECTION—INADVERTENT OMISSION OF NOTICE BY LICENSEE.

The owner of a copyrighted literary production does not lose the exclusive property therein given by the copyright because a licensee authorized to publish the article on the express condition that he print

---

* Rehearing denied February 7, 1903.

therewith the usual copyright notice inadvertently omits to do so, and any one who copies and republishes the article so published, though without actual knowledge of the copyright, does so at his peril.

Grosscup, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The American Press Association, a citizen of the state of New York, is engaged in the business of securing original and selected matter for publication, which it prepares in the form of electrotype plates, and leases for publication to its subscribers for an agreed consideration. The matter thus distributed is sometimes copyrighted matter, and sometimes not; the former being published with the requisite copyright notice, and the latter credited to the source from which it is obtained. The appellee, the Daily Story Publishing Company, a citizen of the state of Illinois, is engaged in supplying newspapers and periodicals throughout the United States with short, copyrighted stories, under a form of contract which gives to such newspapers the exclusive right to publish the stories furnished, within a limited territory, but upon the express condition that they shall, at the time of such publication, print with each story a full copyright notice, as required by the copyright laws of the United States. January 8, 1900, the St. Louis Globe-Democrat, a patron of appellee, published a copyrighted story, entitled "And After"; omitting, through mere inadvertence, any notice that the same was copyrighted. Soon after, the story thus published was appropriated by the appellant and distributed to its patrons by means of its customary plates; proper credit being given to the Globe-Democrat for the story. As a matter of fact, the story belonged to the appellee, and had by it been copyrighted and furnished to the Globe-Democrat under a contract giving that paper the exclusive right to publish the story within the territory covered by the city of St. Louis, upon the express condition that that paper should and would print with the story, in compliance with the statutes of the United States, the copyright notice, as follows: "Copyrighted 1899 by Daily Story Publishing Company;" and the St. Louis Globe-Democrat expressly agreed so to do. The Daily Story Publishing Company sold to other newspapers the exclusive right of publication of the story in their respective territories; being other than the territory granted to the St. Louis Globe-Democrat, and under like contract and condition as that with the St. Louis Globe-Democrat. The appellant had no knowledge that the story had been copyrighted. Both associations acted in good faith; the Daily Story Publishing Company believing that the Globe-Democrat had protected its copyright, and the American Press Association believing that the story was not copyrighted. Upon learning that newspapers were publishing the story without license, the appellee presented to the various papers publishing the story bills for damages, threatening suit for their recovery. The appellant promptly informed the appellee of the manner in which the story was obtained, and assumed responsibility for its use by its patrons, and announced that the publication would be immediately discontinued, which was done. The appellant filed its bill in the Circuit Court to restrain appellee from collecting in any manner from its patrons any damages or compensation, or from instituting any suit therefor; insisting that the appellee had lost its right of copyright by such publication by the St. Louis Globe-Democrat. Upon hearing, a decree was entered dismissing the bill for want of equity, from which decree this appeal is taken.

Louis C. Ehle, for appellant.

Jacob Newman, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge. It is doubtful if this bill can be sustained under any head of equitable jurisdiction. It might be entertained to prevent a multiplicity of suits, if any legal duty is imposed upon the appellant to protect its customers from the demands of the

appellee. It is questionable if any such duty is averred or exists. Wolfe v. Burke, 56 N. Y. 115.

The copyright of the appellee was property, of which it could not be legally deprived without its consent. Title to copyright is no more lost by the theft of the manuscript, or piratical publication of it, than is one's title to a horse lost by the stealing of it, or by the unlawful sale of it to a stranger. Indeed, the statute with scrupulous care has sought to protect the owner from unauthorized use of the subject of the copyright. It has hedged about the publication of a copyrighted article by a stranger with restrictions seldom applied to other kinds of property. It forbids the printing, publication, or importing, selling or exposing for sale, of a copyrighted book, without the consent of the proprietor of the copyright first obtained in writing, signed in the presence of two or more witnesses (Rev. St. § 4964 [U. S. Comp. St. p. 3413]), and forbids the printing or publication of any manuscript whatever, without the consent of the author or proprietor first obtained (Rev. St. § 4967 [U. S. Comp. St. p. 3416]). It is clear, therefore, as Mr. Drone observes, that "when piracy is charged two defenses are open to the alleged wrongdoer: He may show either that he is the author or the assignee (that is, the owner) of the copyright, or that he has a license in writing from the owner to publish." Drone on Copyright, 305. So the question arises whether the publication by the appellant was in any sense with the consent of the appellee; and that in turn depends upon the question whether the St. Louis Globe-Democrat, wrongfully publishing the story without notice of copyright attached, was, in so doing, the agent of the appellee or its licensee. If the former, the appellant is justified; and, if the latter, it is without justification. "The distinction between an assignment and a license is that by the former the ownership of the copyright is vested in the assignee, while by the latter the licensee acquires the privilege of publishing, but no proprietary rights in the copyright." Drone on Copyright, 305. The contract between the St. Louis Globe-Democrat and the appellee gave to the former the exclusive right to publish the copyrighted story in its newspaper within the city of St. Louis. This right was upon the express condition that the St. Louis Globe-Democrat should print with the story the usual copyright notice. This did not constitute the Globe-Democrat the agent of the appellee, but it conferred a license, and the wrongful act of omitting the publication of the copyright should not, we think, be visited upon the appellee. In Saxlehner v. Eisner & Mendelsohn, 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, Saxlehner contracted with the Apollinaris Company, Limited, of London, to sell them a certain quantity yearly of Hunyadi Janos water in Great Britain and other countries, and agreed not to fill any orders coming from the territory granted to the company, but to make them over to the company. It was contended that the conduct of the Apollinaris Company was such as to show an abandonment of the name and label, and that Saxlehner was estopped by their act in further asserting title to them. The court, speaking by Mr. Justice Brown, observed at page 33, 179 U. S., and page 13, 21 Sup. Ct., 45 L. Ed. 60:

"This defense presupposes that the Apollinaris Company had power to bind Saxlehner by its admission and contract. Certainly the contract gave it no such power in express terms. Saxlehner did not purport to make the company his agent. He agreed to sell the company a certain number of cases of his water at a certain price, and also agreed to sell to no one else during the pendency of the contract."

Here the appellee did not purport by its contract to make the Globe-Democrat its agent in any respect. It merely sold that paper the exclusive right of publication of the copyrighted story within a limited territory, and upon the express condition that it should be printed with the usual copyright notice. By oversight the Globe-Democrat in respect of this condition violated its contract, but we cannot comprehend why that breach of contract should be visited upon the appellee.

It is not material, we think, that the appellant in publishing this copyrighted story was not aware that the story was protected by copyright. It published it at its peril, and ignorance will not avail. Drone on Copyright, 403; Lee v. Simpson, 3 C. B. 883.

It is urged that the situation is like the familiar case where one has delivered to another for use his check or draft, signed in blank, with authority to the payee to fill in an amount to be ascertained or agreed upon, not exceeding a given sum, and, filled in by the payee with a larger amount, it is passed by him to a bona fide holder for value without notice, and the maker is held liable. We need not be curious to ascertain whether such holding is bottomed upon the ground of negligence, or of agency and implied authority. It is based upon the latter ground in Bank of Pittsburg v. Neal, 22 How. 98, 108, 16 L. Ed. 323. But whether liability be rested upon one or the other ground, or upon both, the supposed analogous case, we think, has no application to the matter in hand, since here was no agency and no negligence. If the objection to liability be based upon the ground of implied authority it must fail, because there can be no implication of authority in direct contradiction to the express terms of the contract. In the case supposed, liability may properly be sustained upon the ground that the maker has placed in the hands of another the means by which to defraud a third person. The maker trusted the payee with the means to impose upon another, when by proper care he could have prevented such imposition, and so liability in that case may well be predicated upon the theory that "he who trusts most shall lose." But in the case before us there was no imposition practiced upon the appellant. There was no inducement held out by any one. There was no solicitation of its action. The appellant has of its own motion appropriated to itself the literary production of another, supposing indeed that it had the legal right to do it. It does that, however, at its peril, and the case is not different from that of an innocent copying of a piratical publication of a copyrighted work, or the innocent purchase of a horse to which the seller innocently supposed he had good title. A copyright article published without authority is not "current information," free for the use of all. Nor, we think, can the appellee be bound by the action of the Globe-Democrat upon the ground suggested—that, where one of two innocent parties must suffer, he who most immediately,

conduced to the injury should bear the loss. The doctrine is well put in The Monte Allegre, 9 Wheat. 616, 641, 6 L. Ed. 174:

"When one of two innocent parties must suffer, he to whom is imputable negligence; or want of employment of all the means within his reach to guard against the injury, must bear the loss."

Here the appellee was guilty of no negligence, and omitted no means within its reach. It took care by its contract to require, as a condition concurrent with publication, that the Globe-Democrat should print the copyright notice with the publication of the story. It might well be held that, failing compliance with the condition, the publication was unauthorized and piratical. At all events, the appellee was diligent to protect its rights, and omitted no act to guard against possible injury. It surely cannot be insisted upon that it was the duty of the appellee to require proof copy of the imprint before its publication. The one party was located at Chicago; the other, at St. Louis —distant from each other some nine hours by rail. In the case of a daily newspaper, to require such sending, examination, and return of proof would be an exaction of impossible diligence. The appellee in no way contributed to the act of the Globe-Democrat, or to the appellant's act of appropriation of the story, except in this: that it sold the right to the Globe-Democrat to publish the story in connection with and conditioned upon the publication of the proper copyright notice. It certainly contemplated no abandonment of its copyright. It sought by solemn provision of contract to protect, defend and preserve that right. It exercised its legal right in the only way possible, and sought to protect the use of that right as the law requires. Under such circumstances the legal maxim may well be applied, "Qui jure suo utitur neminem lædit." To visit the appellee with the loss of its copyright, as a consequence of the error of the Globe-Democrat, would be to punish an innocent party in protection of one who, without solicitation or inducement and without compensation, has appropriated the property of another.

GROSSCUP, Circuit Judge. I doubt the correctness of the proposition of law upon which this case is decided. I do not doubt, of course, that title to copyright is not lost by theft or piracy of the manuscript. Had the Globe-Democrat no authority, or color of authority, other than that of the theft of another person's intellectual production, the patrons of The American Press Association, though innocent, could not defend themselves against the Daily Story Publishing Company's claims of royalty. They would, in such case, be in a situation somewhat analogous to that of an innocent purchaser of a chattel from one who had stolen the chattel.

But the Globe-Democrat did not steal the article. It had authority for the publication. Its relation to the transaction was more nearly that of a vendee on conditional sale; and in cases of conditional sale, before property can be taken from the hands of innocent third persons, it must be shown that there was something more than a mere promise, upon the part of the vendee, to perform a condition. There must be shown a clear purpose, that pending performance of condition, the vendor should retain title; so that the supposed vendee

is in fact, merely bailee, until the condition is performed. Chicago Railway Company v. Merchants' Bank, 136 U. S. 282, 10 Sup. Ct. 999, 34 L. Ed. 349; Arkansas Cattle Company v. Mann, 130 U. S. 78, 9 Sup. Ct. 458, 32 L. Ed. 854. Even in cases of conditional sale, in some states—notably Illinois, Kentucky, Maryland and Pennsylvania—a bona fide purchaser from a vendee in possession, acquires good title. Lincoln v. Quynn, 68 Md. 304, 11 Atl. 848, 6 Am. St. Rep. 446. American & English Encyclopedia of Law, vol. 6, page 489, note 4. Such seems also to be the English decisions under the English Bankruptcy Act.

But I doubt if the question here involved should be controlled entirely by the law relating to conditional sales of chattels.. The considerations are not the same. The two great underlying purposes of the copyright law, is to protect the author, and to encourage the free circulation of literature upon which no copyright mark is attached. The latter is quite as important as the former. Thus the statute provides a penalty for a false copyright notice upon an uncopyrighted article. It provides also a penalty for piracy. But it provides no penalty for failure to affix a copyright notice upon a licensed article.

I think the considerations that ought to govern this case are more nearly akin to those equitable considerations governing the delivery of blank bills of exchange, or promissory notes. Thus if A. executes and delivers to B. his bill of exchange or promissory note, leaving the amount blank, but stipulating that it shall not exceed, say one hundred dollars; and B., contrary to such stipulation, fills up the amount with a larger sum, and transfers it to C., who pays for it in good faith the larger sum, C. may recover of A. the full amount thus paid, notwithstanding B. may have exceeded his authority. In short, as between A. and B., and persons having knowledge of limitations upon the authority, the note would be good only for the sum named—one hundred dollars—but as between A. and a third person acting in good faith, the note or bill of exchange is good for the sum paid by such third person. Such a blank note or bill of exchange, is, notwithstanding the limitation or condition upon the authority, to be treated as a letter of credit for an indefinite sum. Daniel on Negotiable Instruments, section 142. It may be said that in cases of blank bills or notes the injured third person has parted with something of value. That is true. But will not the right of each individual to make use of current information, unhindered by royalty suits, where no sign denoting copyright is exposed, receive an equally favorable reception? Is the parting with money the only contingency that will invoke this equitable discrimination as to authority as between the parties to the transaction, and authority as to third persons who have innocently acted on the faith that authority was given? I cannot give to the proposition decided the concurrence of a judgment satisfied with itself.

The decree is affirmed.