## HORNER v. CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK.

(Circuit Court of Appeals, Seventh Circuit. March 8, 1912. Rehearing Denied May 7, 1912.)

No. 1,824.

RECEIVERS (§ 142*)—SALE—CAVEAT EMPTOR.

Where a purchaser at a receiver's sale of the property of a corporation did not rely on the inventory and appraisement, but embraced an opportunity to examine the property, after which he bid a specified price, which was accepted, the rule of caveat emptor applied, and he was not entitled to an abatement of the price, because of inability of the receiver to deliver certain of the property contained in the inventory.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 248–251; Dec. Dig. § 142.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Red River Lumber Company against the Maxwell Bros. Company, in which the American Trust & Savings Bank of Chicago, subsequently changed to the Continental & Commercial Trust & Savings Bank, having been appointed receiver of all defendant company's property, sold the same to Sidney A. Horner, and he, not having obtained possession of all of the property purchased, applies for an order requiring the receiver to turn over the property not delivered. From an order awarding petitioner a partial payment of the price, to cover the property not delivered, he appeals. Affirmed.

Lloyd C. Whitman and Henry Horner, for appellant.

Fred H. Atwood, Frank B. Pease, and Charles O. Loucks (John S. Hummer, of counsel), for appellee.

Before BAKER and SEAMAN, Circuit Judges, and ANDERSON, District Judge.

ANDERSON, District Judge. On the 14th day of July, 1910, the Red River Lumber Company filed in the court below its bill against Maxwell Bros. Company. The bill averred the insolvency of the defendant, and prayed that the court appoint a receiver to conserve the property of the defendant, marshal the assets, determine the liabilities, and award the usual relief awarded upon such bills. On the next day, July 15th, the American Trust & Savings Bank of Chicago, whose name was afterward, during the pendency of the cause, changed to the Continental & Commercial Trust & Savings Bank, was appointed receiver of all the property and estate, real, personal, and mixed, of the defendant, Maxwell Bros. Company. The receiver qualified, and on July 26th filed its inventory of the property coming into its possession as such receiver. Upon petition of the receiver the court ordered that the receiver solicit and advertise for bids for the property. Thereafter one Winternitz, having been appointed to appraise the property, filed his appraisement, giving his valuations

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the items contained in the inventory. On October 7, 1910, the appellant, Sidney A. Horner, submitted his bid for the property to the receiver, as follows:

"Continental & Commercial Trust & Savings Bank, Receiver of Maxwell Bros. Company: I do hereby bid the sum of eighty-one thousand dollars ($81,000) for all of the real and personal property of the above-named defendant, mentioned and as described in the appraisement on file in this court in the above-entitled cause, free and clear of all liens, incumbrances, taxes, assessments, and all other charges thereon, except the general taxes levied thereon for the year 1910. It is understood that for the amount of this bid we are to receive a good and merchantable title to said property, and that this bid shall also include all personal property contained in and about the company's plant at or near Twenty-First and Loomis streets, and in the barn in that vicinity, and also all personal property on the dock and in the sheds near the plant of said company, and shall include the real estate described as:"

Then follows the description of the real estate, with which we are not now concerned. On October 11, 1910, the receiver filed its petition with the court, asking that said bid be accepted, which petition was granted, and an order entered that the bid be accepted and the sale made. The $81,000 was paid, and the property was immediately turned over to the purchaser. On November 22, 1910 the purchaser, the appellant here, filed a petition in the cause, setting forth the appointment of the receiver, the appraisement of the property, his bid, and the acceptance of the same, the completion of the purchase, and averring that the receiver failed to turn over the following personal property listed in said appraisement, to wit:

    1,586 brass printing plates.
      516 steel printing plates.
       28 brass printing plates.
      900 bundles of hickory straps.
      156 bundles of hickory straps.
       6½ tons of hay.
       14 sacks of alfalfa.
      200 bushels of oats.
        1 single set of harness and 1 buggy.
      200 assorted saws.
   60,000 oak keg staves.
   41,000 pounds of hoop iron.
  250,560 feet of pine and hardwood lumber.

The petition averred that the printing plates, composing the first three items, were not turned over by the receiver because they belonged to other persons than the defendant, Maxwell Bros. Company. As to some of the remaining items it was averred that they were not delivered to the purchaser at all. These items are of small value. The chief claim made was that there were shortages in the property; that there was not so much of it on hand and turned over to the purchaser as was shown upon the inventory and appraisement.

The master heard a large amount of evidence and made his report finding that the purchaser based his bid upon the appraisement; that there was a mutual mistake made by the parties to the

198 F.—53

sale; that the following property purchased by the petitioner was not delivered to him:

| | | |
|---|---|---|
| 1,614 brass printing plates | $ 617 | 35 |
| 516 steel printing plates | 51 | 60 |
| 156 bundles hickory straps | 78 | 00 |
| 200 assorted saws | 11 | 00 |
| 41,000 lbs. hoop iron | 820 | 00 |
| 248,400 ft. of lumber | 3,477 | 60 |
| Total | $5,055 | 55 |

—and recommended that the receiver be directed to pay appellant said sum of $5,055.55.

Numerous exceptions were filed to the master's report. On April 19, 1911, the court overruled all the exceptions of the purchaser, and sustained all the exceptions of the receiver, except in so far as they applied to the printing plates. The receiver has not assigned cross-error upon the court's ruling as to the printing plates, although in our view of the case it might well have done so.

The sale was a judicial sale in bulk. The property sold for $81,-000. It was appraised at $126,787.56. The purchase price was paid, and the property in the hands of the receiver was delivered to the purchaser, and presumably he has disposed of it. He made no offer to rescind, to return the property when he discovered the shortages, but kept all he got and asked to be made good for the shortages. There is in the case no claim of fraud. The evidence discloses, not only that there was an opportunity given to examine the property, but that the purchaser and his agent did look over it at least twice before the sale was made. Upon this record the question is presented: Shall the purchaser at the sale be awarded the sum allowed by the master, or any sum, because of the mutual mistake which the master found was made, or does the rule caveat emptor apply?

"The maxim 'caveat emptor' is applied in all its force to judicial sales of personal property. There is no warranty, in law, for there is no one to fall back on." Rorer on Judicial Sales (2d Ed.) § 528.

"The rule of 'caveat emptor' applies in all its rigor to judicial sales. The Supreme Court of the United States hold that 'generally in all judicial sales the rule "caveat emptor" must necessarily apply from the nature of the transaction there being no one to whom recourse can be had for indemnity against any loss which may be sustained. Is there, then (they ask), anything peculiar in the powers of a court of admiralty that will authorize its interposition, or justify granting relief to which a party is not entitled by the settled rules of the common law?' They say, 'We know of no such principles.' Though the case in which this doctrine is thus broadly asserted was a case in admiralty, it will be seen that the decision was avowedly put upon the principles of the common law. The same case is expressly referred to and the same principle reasserted by the United States Court of Claims in the case of Puckett v. United States." Rorer on Judicial Sales (2d Ed.) § 476.

The same author, in section 475, says:

"It is a well-settled principle that in judicial sales there is no warranty. This principle, as a general rule, holds good as to all those sales of property, real or personal (they being in character judicial sales), made in equitable proceedings under the direction and control of the courts, usually denom-

inated mortgage sales, guardian's, executor's, and administrator's sales, sales for enforcement of vendors' and statutory liens, and sales in proceedings for partition. In short, in all sales made under supervision and control of the courts on decrees in equity or on decrees made in the exercise of equity powers, there is no warranty, and the purchaser takes what he gets. The officer, trustee, or person executing the deed is the mere 'agent or instrument' of the court, is not liable for defect of title or insufficiency of the proceedings, nor at all, except for fraud, unless he conveys with warranty, and then the covenant of warranty binds him personally, and him only. In the Monte Allegre, 9 Wheat. 616, 6 L. Ed. 174, this rule is plainly asserted by the Supreme Court of the United States, and it is the general doctrine in most, if not all, of the states, and of the common law."

The purchaser in his bid expressly stated:

"This bid shall also include all personal property contained in and about the company's plant at or near Twenty-First and Loomis streets, and in the barn in that vicinity, and also all personal property on the dock and in the sheds near the plant of said company."

This shows that the purchaser did not, as found by the master, rely upon the inventory and appraisement. The purpose of the clause just quoted was manifestly to include all personal property in and about the company's plant, if any, that might have been omitted from the inventory and appraisement. Having had the opportunity to examine the property before the purchase, and having before the purchase examined the same, as shown by the record, and there being no fraud alleged or proven, no reason is seen why the rule "caveat emptor" should not apply in all its force.

The decree of the court below should be affirmed; and it is so ordered.