J. B. ELLIS, Adm'r, v. J. ADDERTON and others.

*Judicial sale—Purchaser—Notice of defective title—Surety—
Administrators.*

1. Where a purchaser has notice of defects in the title to land sold (it being
   announced at the sale that only the intestate's interest was to be disposed
   of, and if he had no title the purchaser would get none), but executes notes
   for the sums bid; *Held*, the purchaser buys at his own risk, and is liable
   on his contract.

2. The surety upon the notes, in such case, who also had full knowledge of the
   fact, is also liable.

3. An administrator must apply, for license to sell land for assets, to the supe-
   rior court of the county where the land or some part thereof is situated.
   Bat Rev., ch. 45, § 61.

   (*Shields* v. *Allen*, 77 N. C., 375, distinguished and doubted.)

SPECIAL PROCEEDING commenced before the clerk and heard
at Fall Term, 1882, of DAVIDSON Superior Court, before
*Gudger, J.*

The plaintiff, administrator of Andrew Hunt, finding the
indebtedness of the estate of the intestate very large, and the
personal property in hand wholly inadequate to its discharge,
filed his petition against the heirs-at-law for the sale of certain
lands, consisting of five town lots and a tract of 186 acres, therein
particularly described, and which, it is alleged, "were embraced
in a deed of conveyance signed by Andrew Hunt, as the peti-
tioner is advised, is void and invalid."

There was a decree of sale, and the plaintiff, acting under its
authority, after due advertisement, on July 26th, 1873, exposed
said lands at public sale, when one H. B. Dusenbury, since
deceased, became the purchaser of each parcel at various sums as
stated in the report, and gave several bonds therefor with John
H. Peebles and E. D. Hampton sureties, payable as directed in
the order.

The several sales were all confirmed and the plaintiff authorized and required on payment of the purchase money to make title to the purchaser.

The several notes, all under seal and given for the separate prices of the several parcels of land sold, not being met at maturity, notice was served upon the surety, Peebles, the present defendant, of an intended application to be made for judgment upon them against him before the probate judge. Such motion was made and an answer thereto put in on oath, in which it is alleged, on information and belief, that all the lands sold by the plaintiff had been conveyed by the intestate in his life-time, in trust to pay debts, and other sales had also been made under execution and for taxes, so that no estate or interest remained which could be disposed of under the decree, and no title conveyed in any of them.

The defendant, further insisting that no estate was acquired by the purchaser, demanded that he be exonerated from his liability on the notes, at least until the doubts clouding the title be removed, and the ability of the plaintiff to pass an estate in the lands under the decretal order be first made to appear; and further, in order to a full and final adjustment, that the heirs-at-law of the said H. B. Dusenbury be made a party in the proceeding.

The plaintiff thereupon files a verified replication in which, without a direct denial of the several conveyances, he avers that both the purchaser and his surety were present and heard his announcement previous to putting up the lands, that he only sold the interest, if any, that his intestate possessed, that no warranty would be given, that all the alleged defects in the title were fully understood and known, and that, on account of the previous sales and the doubts as to the title, the property did not bring one-fifth part of its real value with those doubts removed.

The cause was thereupon transferred to the civil issue docket for trial at term time, and an order of reference entered and issues prepared to be submitted to the jury.

The referee made his report to spring term, 1881, in which he

finds that the intestate did, on April 21st, 1876, convey by deed in trust to F. C. Robbins all the real estate mentioned in the petition and sold by the administrator, except the tract of 186 acres, therein designated as number 9, the legal title to which alone, was vested in the intestate at the time of his death.

The verdict of the jury upon the submitted issues affirms that both the purchaser, Dusenbury, and the present defendant, his surety, had notice of the defects in the title to the lands sold, that proclamation was made at the sale that only the intestate's interest was to be disposed of, and that if he had no title the purchaser would get no title.

The court thereupon proceeded, no exception to the report being taken, to confirm the same, gave judgment against the defendant upon the note for the price of the larger tract, and refused to give judgment against him upon the others, and adjudged that the defendant recover the costs of the issue.

From the latter rulings the plaintiff appeals.

*Messrs. Scott & Caldwell* and *M. H. Pinnix*, for plaintiff.
*Mr. J. M. McCorkle*, for defendant.

SMITH, C. J., after stating the above.  It does not appear that the purchaser in his life-time desired to repudiate and be relieved of his contracts, upon the ground assigned by the defendant, and as the consideration of the notes enures alone to the benefit of himself and his heir or heirs, and the defendant is a surety, merely, with no other interest in the lands except their being looked to as a means of payment, his right to set up a defence open to the purchaser is not entirely free from doubt.

But waiving the point, as all the facts in reference to the antecedent conveyances and the consequent infirmity of title now relied on as a defence were well understood, as the jury find, by both the principal and surety before the lands were bid off by the former, and the notes for the sums bid, executed, and thus

all the hazards attending the purchase assumed, can they now ask to be relieved from the contract? The solution of this inquiry disposes of the appeal.

The administrator in such a proceeding represents primarily the creditor interest, and can only obtain license to sell real estate when it becomes necessary to pay the intestate's debts. He becomes thus clothed with a power of converting the land to the required extent into assets with which to discharge the liabilities of his intestate, and the sale in its general relations and effects differs but little from a sale under execution, made while the debtor is living, except that in the one case the money goes to the execution creditor, and in the other to a trustee representing them all to be distributed under the law.

The purchaser in either case may pursue and recover the property of the debtor, as could the creditor himself, and in respect to land may defeat the claim of a fraudulent alienee. So too, the administrator may sell an encumbered estate, or land to which there are contesting claims, leaving to the purchaser the controversy that may spring from the assertion of his right thereto. The statute allows him to sell "*all rights of entry and rights of action, and all other rights and interests,*" which the intestate may have possessed, or his creditors could have enforced against him. Bat. Rev., ch. 45, § 71.

The petition itself states that the real estate proposed to be sold is "*embraced in a deed of conveyance signed* (executed, we suppose to have been intended) *by Andrew Hunt, which, as your petitioner is advised, is void and invalid*"; the matter was fully understood, and the purchaser and his surety knew that only such title and interest as the intestate may have possessed, and none other, would be acquired; the purchaser has died without asking to be relieved; the land brings in consequence a fractional part of its value. Under these circumstances has the defendant any equity or right to be relieved of his obligation?

If it had turned out, in this purchase at hazard, that a good title had been obtained, the speculation would have been largely

profitable; if a bad one, ought he not equally to abide by his act?

There is no pretence or suggestion of fraud, imposition or mistake in the entire transaction, and if any adventurous purchaser can, with his eyes open, take advantage of his contract when remunerable, and be exonerated from it when it results otherwise, it would defeat sales of doubtful rights, and encourage speculation in bidders at them, who may make but cannot lose by the operation.

In *Shields* v. *Allen*, 77 N. C., 375, it is declared that when a commissioner acting under a judicial order sells the land and the purchaser acquires no title, he may have the contract rescinded, and any money he may have paid restored, because of his confidence in the results of a supposed judicial inquiry and determination; but that it is otherwise when the sale is of the estate of the persons named, and then the purchaser takes at his own risk.

Assuming the propriety of this nice distinction between a sale of *land* and an *estate* in the land in their legal consequences, questionable at least, the ruling in the case has reference to an innocent purchaser who bids for and buys the land under the impression that he thereby will acquire the title, a mistake into which he is led without the means of prompt correction. But it cannot be applicable to a case where the purchaser is in possession of full information of the facts, and is in express terms told that he will get only the interest of the intestate, and none, if the intestate has none in the land, and voluntarily, with this knowledge, bids, enters into the contract, and executes his several notes for the different sums of purchase money.

"In all sales made under supervision and control of the courts on decrees in equity, or on decrees made in the exercise of equity powers," is the conclusion reached by a recent writer, "there is no warranty; the purchaser takes what he gets." Rorer on Jud. Sales, § 458.

And again he says: "In the absence of misconception and of

fraud, the buyer must look out for himself.   He buys at his own risk both *as to title and as to quality.   Ibid*, § 462; *The Allegre,* 9 Wheat., 616.

The rule is more stringently laid down by BLAND, Chancellor, in *Brown* v. *Wallace,* 4 Gill and John. (Md.), 479, in these words: "The court in no case undertakes to sell anything more than the title of the parties to the suit, and consequently it allows of no inquiry into the title, at the instance of the purchaser or any one else." The rule, however, is different in England, and when lands are there decreed to be sold, the court, in most cases, undertakes to sell a good title, and it is common, therefore, to make a reference to the master to ascertain whether a good title can be made, and if not, the purchaser will not be compelled to comply with his bid.

But we can see no rule in force anywhere which permits parties, in the position of the deceased purchaser and the defendant, so to be relieved of the contract entered into under the circumstances of the present case.

The defendant further objects to the jurisdiction of the probate court of Davidson, and insists that as the intestate resided in Davie county and administration was granted in that county, the whole proceeding is *coram non judice,* and void. This was the former law (Rev. Code, ch. 46, § 5), but it is charged by the act of April 6th, 1869 (Bat. Rev., ch. 45, § 61), which directs the application for license to sell a deceased debtor's land to be made "in the superior court of the county where the land or some part thereof is situate."

While it is true the general provisions of the act are made applicable only to cases wherein original administration is granted after July 1st, 1869, yet the proviso to the section, limiting the operation of the law, declares that the limitation "shall not be construed to prevent its application so far as it relates to the courts having jurisdiction of any action or proceeding for the settlement of an administration, or to the practice and procedure therein. *Ibid,* § 58.

As the new courts are substituted for the former, the method of procedure prescribed must supersede that of the other, and the court taking cognizance, must be the same as to all administrations before as after that date. This objection must be overruled.

As the appeal is from a ruling upon a collateral matter, this will be certified for further proceeding in the court below according to the law declared in this opinion.

Error.                                    Reversed.