CALVIN B. GIBSON v. PHILIP D. LAMBETH, INDIVIDUALLY AND AS COMMISSIONER IN CIVIL ACTION NO. 82CVD3834, AND VERSAILLES CONDOMINIUM ASSOCIATION, A NORTH CAROLINA CORPORATION

No. 8726SC39

(Filed 7 July 1987)

1. **Judicial Sales § 4— commissioner's sale—liens against property—application of caveat emptor**

There was no merit to plaintiff's contention that the rule of *caveat emptor* did not apply to a court ordered commissioner's sale, since plaintiff was on notice before and during the sale that the condominium was being sold subject to a particular deed of trust and "any unpaid deeds of trust"; plaintiff was familiar with sales of real property and the need to search titles, but failed to inquire of defendant commissioner as to whether title to the condominium had been searched; despite this knowledge, plaintiff voluntarily entered into the contract to purchase; and plaintiff therefore was not an innocent purchaser and was subject to *caveat emptor.*

2. **Fraud § 4; Judicial Sales § 4— commissioner's sale—liens against property—no knowledge of misrepresentation—no showing of fraud**

   Plaintiff's claim of fraud in a court ordered commissioner's sale must fail where plaintiff conceded that defendant did not have any actual knowledge that his representations about the number of liens against a condominium were false, and false representation of a material fact is an essential element in a claim for fraud; furthermore, defendant never represented to plaintiff that a particular deed of trust was the only lien against the property, but rather notified plaintiff that the property was being sold subject to the named deed of trust and "any unpaid deeds of trust."

3. **Judicial Sales § 2— compliance with notice requirements**

   Defendant fully complied with N.C.G.S. § 1-339.15 regarding the notice requirements for the public sale of a condominium.

APPEAL by plaintiff from *Snepp, Judge.* Order entered 25 September 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 3 June 1987.

This is a civil action to recover alleged damages from plaintiff's purchase of a condominium at a commissioner's foreclosure sale. The trial court granted defendant Commissioner Lambeth's motion for summary judgment, and plaintiff appealed from that order to this Court. By an Opinion filed 17 June 1986, this Court dismissed plaintiff's appeal as interlocutory since the order appealed from was not final as to plaintiff's claim against defendant Versailles Condominium Association (Association). A consent judgment was entered dismissing all claims against defendant Association. Plaintiff now appeals from the initial order denying his motion for summary judgment and granting defendant Lambeth's motion for summary judgment.

On 20 January 1982, defendant Association filed a claim of lien against Versailles Condominium Unit #2610-G owned by David M. McKinnon for unpaid monthly assessments. On 22 April 1982, defendant Lambeth, representing defendant Association as attorney, filed an action in the Mecklenburg County District Court against David M. McKinnon to foreclose on the lien due to unpaid monthly assessments, and for an order directing the sale of the condominium to satisfy the indebtedness. On 1 July 1982, the Mecklenburg County District Court entered a default judgment and order of sale granting judgment in favor of defendant Association, appointing defendant Lambeth as commissioner to sell the condominium at public auction, and directing the property

to be sold subject to "any unpaid deeds of trusts" predating defendant Association's lien.

On 12 July 1982, defendant Lambeth, pursuant to the court order, posted a "Notice of Sale of Real Property" on the bulletin board at the Mecklenburg County Courthouse. As directed by the court, the notice stated that the sale was to be made "subject to the lien of that certain deed of trust in favor of North Carolina Federal Savings and Loan Association" listed in the Mecklenburg County Register of Deeds. Notices of sale for the condominium were also published four times in the Mecklenburg Times from 16 July to 6 August 1982. No notices were posted or published stating that the condominium was being sold subject only to the above mentioned lien.

A few days prior to the sale, plaintiff telephoned defendant Lambeth inquiring about the condominium. Plaintiff was experienced with purchasing real estate, and was familiar with title searches. Plaintiff did not inquire of defendant during that call whether the title had been searched, but, in his deposition, admitted assuming that it had been done. Neither plaintiff nor defendant Lambeth searched the title. Defendant Lambeth did not tell plaintiff that he had searched the title, nor that he had had the title searched by someone in his law office prior to the sale. In his deposition, defendant Lambeth stated that "I do not know how I came to know the book and page of the deed of trust from North Carolina Federal. I could either have done that by going to the Register of Deeds and checking the grantor/grantee index or I could have been told that by David Douglas [the realtor for whom defendant Lambeth began collection proceedings against the owner of the condominium]. I do not recall which."

On 16 August 1982, defendant Lambeth conducted the public sale of the condominium. Plaintiff was the sole bidder with a bid of $2,900.00. Defendant Lambeth stated that immediately prior to the sale he again told plaintiff that the condominium was being sold pursuant to the North Carolina Federal Deed of Trust. Plaintiff stated in his deposition that he assumed the $2,900.00 included the cost for a title search by defendant Lambeth, and that "I didn't ask him, and he didn't say, that the legal cost included certification of title."

Following the sale, defendant executed and delivered to plaintiff a deed for the condominium which deed noted that the sale was subject to "an outstanding deed of trust in favor of North Carolina Federal Savings and Loan Association."

On 25 October 1982, defendant Lambeth notified plaintiff that an outstanding deed of trust against the condominium was discovered that predated the North Carolina Federal Deed of Trust, as well as a federal tax lien for several thousand dollars. The prior deed of trust was dated 28 January 1981 and filed 5 February 1981 in favor of Virginia Mortgage Corporation for $5,134.00. In December of 1982, Virginia Mortgage Corporation foreclosed on its deed of trust resulting in a sale of the condominium to the corporation, and extinguishing plaintiff's interest in the property. On 9 September 1983, plaintiff filed his complaint for judgment in the amount of $8,869.00 against defendants Lambeth and Association, claiming, *inter alia*, damages based on defendant Lambeth's alleged gross negligence and oral and written misrepresentations. From an order granting summary judgment for defendant Lambeth subsequent to a consent judgment dismissing all claims against defendant Association, plaintiff appeals.

*Parker Whedon, for plaintiff appellant.*

*Golding, Crews, Meekins & Gordon, by John C. Golding and Andrew W. Lax, for defendant appellee.*

JOHNSON, Judge.

Plaintiff's Assignment of Error raises the issue of whether the trial court erred by concluding as a matter of law that no issue exists as to any material fact to support plaintiff's motion for summary judgment, and that defendant is entitled to summary judgment. We find no merit to plaintiff's Assignment of Error.

The trial judge's role in ruling on a motion for summary judgment is to determine, based on the parties' pleadings and affidavits, whether any material issues of fact exist that require trial. If the only issues to be decided are issues of law, then summary judgment is proper. *Wachovia Mortgage Co. v. Autry-Barker-Spurrier Real Estate, Inc.*, 39 N.C. App. 1, 3-4, 249 S.E. 2d 727, 729 (1978), *aff'd*, 297 N.C. 696, 256 S.E. 2d 688 (1979). The burden is on the movant to show the lack of any triable issue of fact.

*North Carolina National Bank v. Gillespie*, 291 N.C. 303, 230 S.E. 2d 375 (1976). We find that the trial court properly granted summary judgment in defendant's favor.

Plaintiff's complaint alleged, *inter alia*, that defendant was negligent in failing to comply with the court order to sell the property subject to "any unpaid deeds of trust" predating defendant Association's lien filed 20 January 1981 and by not searching the title to the condominium. That search, argues plaintiff, would have revealed that Virginia Mortgage Corporation's lien was filed prior to North Carolina Federal's lien. Plaintiff further alleged that defendant Lambeth misrepresented to plaintiff that the property would be subject only to the North Carolina Federal lien, that such misrepresentation induced plaintiff to purchase the condominium to his detriment, and that such misrepresentation was grossly negligent.

**[1]** Plaintiff argues that the rule of *caveat emptor*, whereby the purchaser buys property at his own risk, does not apply to a court ordered commissioner's sale. He argues that a commissioner's sale is distinguishable from an execution sale, to which *caveat emptor* applies. If, as plaintiff urges, *caveat emptor* does not apply to the case *sub judice*, then he is entitled to an order to rescind the contract and receive his purchase price. We must decide whether *caveat emptor* applies and, if so, what are the consequences.

In *Shields v. Allen*, 77 N.C. 375 (1877), cited by plaintiff as controlling, the North Carolina Supreme Court stated the following:

> The plaintiff, however, contends that the purchaser took the risk of getting a title, and must pay his bid, although it happens that he gets no title, just as a purchaser at an execution sale must.
>
> There is no doubt but that such is the law of execution sales. It is equally clear that when a court orders a sale of a particular piece of land for partition or any other purpose, it offers to sell a good title, and will not compel a purchaser to complete his purchase by payment of the price if it appears that a good title cannot be made, except when the sale is expressly or by implication stated to be merely of the *estate* of

a person named, as on the foreclosure of a mortgage, or of some other certain and definite estate or right.

. . . .

The test whether a good title or merely the estate of a named person, whatever it may turn out to be, is offered for sale, must be found in the decree itself; and where that is not clear, in the nature of the proceedings in which it is made. In a proceeding for partition, the court first determines that the title to the property is in the parties, and between the parties the adjudication is conclusive. It then decrees that the land or other property be sold. Consequently it offers for sale a good title, and cannot insist upon payment by a purchaser unless such a title can be made. So it is in cases where a court decrees a sale by an executor or other trustee, and other analogous cases. The nature of the proceeding implies that a good title is offered, and it will be so deemed unless there be something in the decree for sale which forbids such an implication. A court may, of course, always describe in its decree what estate its commissioner is to sell, and it ought always to do so; and especially is it needful to do so when it means that the purchaser is to take the risk of title. Generally, it would unduly disparage the value of property to order a sale at the risk of the purchaser as to the title, and it would be unjust to the owners. It suggests that the title is doubtful. Hence, a court will never order a sale on such terms except in exceptional cases.

. . . .

The distinction between such cases and a sale by a sheriff under execution is obvious. In the case of execution sales the order of the court, that is, the *fi.fa.*, commands the sheriff to sell any property of the defendant. Nothing in particular is directed to be sold. The nature and form of the proceedings show that there has been no inquiry as to the property or estate of the defendant in the thing sold.

*Shields, supra,* at 376-78. (Emphasis in original.)

There is little question in the case *sub judice* that the trial court ordered the sale of property and not merely of the estate of a named person. Therefore, under *Shields, supra,* it would seem

---

**Gibson v. Lambeth**

---

that the court in the case *sub judice* offered to sell good title, and should not compel plaintiff to complete the purchase where good title was not conveyed.

However, the North Carolina Supreme Court in *Ellis v. Adderton*, 88 N.C. 472 (1883), limited the holding in *Shields, supra,* to innocent purchasers, and questioned the distinction between court ordered sales of land and of an estate in land:

> In *Shields v. Allen*, 77 N.C. 375, it is declared that when a commissioner acting under a judicial order sells the land and the purchaser acquires no title; he may have the contract rescinded, and any money he may have paid restored, because of his confidence in the results of a supposed judicial inquiry and determination; but that it is otherwise when the sale is of the estate of the persons named, and then the purchaser takes at his own risk.

> Assuming the propriety of this nice distinction between a sale of *land* and *estate* in the land in their consequences, questionable at least, the ruling in the case has reference to an innocent purchaser, who bids for and buys the land under the impression that he thereby will acquire the title, a mistake into which he is led without the means of prompt correction. *But it cannot be applicable to a case where the purchaser is in possession of full information of the facts, and is in express terms told that he will get only the interest . . . [in the property for sale] and voluntarily, with this knowledge, bids, enters into the contract, and executes his several notes for the different sums of purchase money.*

*Ellis, supra,* at 476 (emphasis supplied).

The facts in the case *sub judice* are in line with the limitation placed on *Shields, supra,* by *Ellis, supra;* plaintiff in this case was on notice, before and during the sale, that the condominium was being sold subject to the North Carolina Federal deed of trust and "*any* unpaid deeds of trust"; plaintiff was familiar with sales of real property and the need to search titles, but failed to inquire of defendant commissioner as to whether title to the condominium had been searched; despite this knowledge, plaintiff voluntarily entered into the contract to purchase. Considering the holding in *Shields, supra,* in light of the limitation placed on it by *Ellis,*

*supra*, we now hold that plaintiff was not an innocent purchaser of the kind contemplated in *Shields* and *Ellis*, and was therefore subject to *caveat emptor*, and is bound by the purchase as entered into.

[2] Plaintiff next argues that defendant is liable to plaintiff for recklessly misrepresenting the number of liens against the condominium, inducing plaintiff's reliance to his detriment. We find no merit to defendant's argument.

Plaintiff claims essentially that defendant's representation that the condominium was subject to only one deed of trust, although admittedly made without actual knowledge of "falsity," was made with reckless disregard for the truth. He cites *Brickell v. Collins*, 44 N.C. App. 707, 262 S.E. 2d 387, *disc. rev. denied*, 300 N.C. 194, 269 S.E. 2d 622 (1980), as controlling. Plaintiff's reliance on *Brickell, supra*, is misplaced. That case dealt with a claim of fraud on the part of a vendor of real property. Plaintiff in the case *sub judice* concedes in his brief that defendant Lambeth did not have any actual knowledge that his representations about the sale of the condominium were false. False representation or concealment of a material fact is an essential element in a claim for fraud. *Brickell, supra*, at 710, 262 S.E. 2d at 389. Plaintiff quotes the following language from *Brickell, supra*: "[g]uilty knowledge will be implied from a statement made by a vendor who affirms a material fact which he does not know to be true." *Id.* at 711, 262 S.E. 2d at 390. Plaintiff implies from this language that defendant Lambeth is liable for fraud since he told plaintiff that the property was subject only to the North Carolina Federal deed of trust and not to the earlier Virginia Mortgage Corporation deed of trust. We disagree. The record before this Court tends to show that defendant Lambeth never represented to plaintiff that the North Carolina Federal deed of trust was the *only* lien against the property, but rather notified the plaintiff that the property was being sold subject to the North Carolina Federal deed of trust and "any unpaid deeds of trust." We find no misrepresentation, either express or implied, by defendant Lambeth on the facts before us in his role as commissioner during the sale of the condominium.

In addition, plaintiff makes the following arguments. First, that he reasonably relied on defendant Lambeth's alleged misrep-

resentations to his detriment, and that defendant is thereby liable for plaintiff's damages. Because we find that defendant did not misrepresent any material facts to plaintiff, we find plaintiff's argument as to his alleged reliance meritless. Secondly, plaintiff argues that defendant Lambeth did not fully comply with the court order of sale because the amount of the acceptable minimum bid allegedly included an amount to pay a lien filed subsequent to the defendant Association's dues assessment lien. No authority is cited in plaintiff's argument in violation of Rule 28(b)(5), N.C. Rules App. P., and addresses an issue beyond plaintiff's claims of misrepresentation and negligence raised in his complaint. We find plaintiff's argument meritless. Thirdly, plaintiff argues that defendant Lambeth is liable on the basis of "ordinary negligence." Plaintiff's argument in his brief consists of a statement that the basis of liability for ordinary negligence is supported by *Restatement (Second) of Torts* s. 522 (1965), and then cites the section. No argument is made in support of plaintiff's claim. We find no merit to plaintiff's contention.

[3] Lastly, plaintiff argues that defendant Lambeth failed to comply with G.S. 1-339.15 and the court order of sale. We disagree.

G.S. 1-339.15, which directs the public sale of land, states that:

The notice of public sale shall

(1) Refer to the order authorizing the sale;

(2) Designate the date, hour and place of sale;

(3) Describe real property to be sold, by reference or otherwise, sufficiently to identify it, and may add such further description as will acquaint bidders with the nature and location of the property;

(4) Describe personal property to be sold sufficiently to indicate its nature and quantity, and may add such further description as will acquaint bidders with the nature of the property;

(5) State the terms of the sale, specifying the amount of the cash deposit, if any, to be made by the highest bidder at the sale; and

(6) Include any other provisions required by the order of sale to be included therein.

The trial court's order of sale, as alleged by plaintiff in his complaint, states that the order:

(a) granted judgment in favor of Versailles for the sum of $378.55 and court costs including an attorney fee for the Defendant Lambeth;

(b) appointed the Defendant Lambeth as commissioner to sell Unit 2610-B at public auction after due notice as required by Statute;

(c) directed that the property, as a part of the terms of sale, be sold subject to 'any unpaid deeds of trust predating' the Versailles lien.

The record before this Court shows that defendant Lambeth published notice of the public sale of the condominium four separate times, and included in those notices that the sale was subject to the North Carolina Federal deed of trust. Notice was posted on the bulletin board in the Mecklenburg County Courthouse. No notice was posted or published stating that the condominium was being sold subject *only* to the North Carolina Federal deed of trust. Defendant Lambeth made the same representations to plaintiff by telephone and during conversation immediately before the public sale. The evidence does not show that he ever represented to plaintiff that the sale was subject only to the North Carolina Federal deed of trust. We find that defendant Lambeth fully complied with G.S. 1-339.15 and the court order of sale. We hold that based on the forecast of evidence from the record before this Court, the trial court properly granted summary judgment in favor of defendant Lambeth.

Affirmed.

Judges ARNOLD and PARKER concur.