RENDERED: DECEMBER 16, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1227-MR

RED BRICK, LLC          APPELLANT

       APPEAL FROM FAYETTE CIRCUIT COURT
v.     HONORABLE LUCY ANNE VANMETER, JUDGE
        ACTION NO. 18-CI-04012

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT;
AMERICAN FOUNDERS BANK,
INC.; AMERICAN FOUNDERS LOAN
CORPORATION; BANK OF THE
BLUEGRASS AND TRUST
COMPANY; CENTRAL BANK &
TRUST COMPANY; CHARLES E.
HARVEY D/B/A TAC BLUEGRASS
SIDING OF LEXINGTON;
COMMUNITY TRUST BANK, INC.;
CROUSE CONCRETE, INC.;
DAUENHAUER & SON PLUMBING
AND PIPING, INC.; FORCHT BANK,
NA; GREENVIEW CONSTRUCTION,
INC.; KENTUCKY UTILITIES
COMPANY; READY MIX
CONCRETE MIX OF SOMERSET,
LLC F/K/A READY MIX CONCRETE
OF SOMERSET, INC. A/K/A TRIPLE
CROWN CONCRETE, A DIVISION
OF HINKLE CONTRACTING

COMPANY, LLC; SHERMAN,
CARTER & BARNHART, P.S.C.; AND
TCI NASHVILLE, LLC                                              APPELLEES


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND K. THOMPSON, JUDGES.

CALDWELL, JUDGE:  This matter involves the sale of two parcels of property in Fayette County.  The owner of the properties had incurred fines for failure to perform upkeep on the vacant lots and the Fayette Circuit Court ordered the lots sold upon motion of Lexington-Fayette Urban County Government (hereinafter "LFUCG") for judgment and order of sale to recoup the fines owed.  Red Brick, LLC was the winning bidder at a Master Commissioner sale and afterward alleged irregularities with the sale which they claimed in filed exceptions to the sale.  The Fayette Circuit Court denied Red Brick, LLC relief and they appeal.

**FACTS**

In November of 2018, LFUCG filed a complaint for foreclosure naming the owners and lienholders of two parcels of land in Lexington, 2260 and 2261 Danforth Drive.  The complaint alleged that the owner had failed in upkeep of the parcels, resulting in a nuisance which LFUCG had abated, to its detriment. In February of 2021, the Fayette Circuit Court granted LFUCG summary judgment

-2-

and ordered a Master Commissioner sale of the property to recoup the amount owed LFUCG.[1]

The Master Commissioner advertised the sale in compliance with the requirements, properly describing the property to be sold and the purpose for the sale. Additionally, in compliance with statutory requirements, two disinterested "housekeepers" of the county were sworn by the Master Commissioner to arrive at a fair market value of the two properties.[2] The total fair market value of the combined parcels ascribed by them was $100,000.

Because of the novel coronavirus pandemic, the auction was held online on May 26, 2021. The Master Commissioner's website provided the following caution, in part:

> Other information regarding the property may be found at the Property Valuation Administrator's office or at its Web Site at www.FayettePVA.com.
>
> Master Commissioner Sales are "Buyer Beware" Sales. The Property is sold "As Is" "Where Is." The condition

---

[1] The amount of the default judgment included the principal sum owed of $6,315.95, interest on that amount at 6% until paid, costs and fees of the foreclosure action, attorney's fees, any taxes of insurance due, plus any other costs due.

[2] Kentucky Revised Statutes ("KRS") 426.520 establishes the requirements for real property sold under an order or judgment of court. It provides:

> (1) Before any real property is to be sold under an order or judgment of a court, other than an execution, the commissioner or other officer selling the property shall have it appraised, under oath, by two (2) disinterested, intelligent housekeepers of the county, who may be sworn by the officer. If they disagree, the officer shall act as umpire. If only a part of a tract of land is sold, the part sold shall, after the sale, be revalued in like manner.

of the property is not warranted by the Court, by the Master Commissioner, or by the Plaintiff. If you bid on property, you should have done your due diligence before you bid, not after!

Red Brick, LLC was the winning bidder, having bid $55,514 for the combined parcels. The Report of Sale was timely filed by the Master Commissioner on May 28, 2021. Thereafter, Red Brick, LLC filed exceptions to the sale on June 7, 2021.[3] The "cause" listed in the exceptions was the fact the lots were not "buildable properties" and had no economic value.

LFUCG responded to the exceptions and pointed out the "buyer beware" character of Master Commissioner sales, enumerating where such notice was provided to prospective bidders on the Master Commissioner's website.[4] In addition, LFUCG pointed out that the website also specified that exceptions were to be pertaining to quality of title, and that Red Brick, LLC had not complained of any defects with the title of the property.

The Fayette Circuit Court entered an order confirming the sale on June 10, 2021, not having realized that exceptions to the sale had been filed by Red

---

[3] The first exceptions filed by the Appellant were actually in the name of another entity organized by the principles of Red Brick, LLC. Amended exceptions listing Red Brick, LLC as the Third Party Purchaser were filed on June 8, 2021. *See* Kentucky Rule of Civil Procedure ("CR") 53.05(2).

[4] "In judicial sales, there is no warranty, express or implied." *The Monte Allegre*, 22 U.S. 616, 618, 6 L. Ed. 174 (1824).

Brick, LLC. Upon motion of Red Brick, LLC under CR 59.05 to vacate the order, the circuit court did so vacate and scheduled a hearing on the exceptions to the sale.

The evidentiary hearing was held on September 7, 2021. Red Brick, LLC presented the testimony of a certified appraiser it had hired to appraise the property after the sale. LFUCG presented the testimony of the Master Commissioner, James H. Frazier, III. After hearing the testimony of the witnesses and the arguments of counsel, the circuit court took the matter under advisement.

The circuit court issued an opinion and order confirming the sale and denying relief to Red Brick, LLC on September 16, 2021. In the opinion, the court noted that the listing of the properties on the Master Commissioner's website had included the plat description. The court held that a purchaser exercising due diligence would have reviewed the plat therein described and would have seen the following restriction on the lots: "There shall be no residential uses . . . within 125 feet of the southern boundary of the subject property according to the demarcation shown on the corollary development plan." A purchaser reviewing the plat description would have noted that one of the lots was described as a "draining and retention easement." Both lots were within a boundary reserved for greenspace for the neighborhood in which they were located. Further, the court noted, the Master Commissioner's website instructed prospective bidders to refer to the Property

Valuation Administrator's website or office for more information regarding subject properties.[5]

The court denied relief to Red Brick, LLC, finding that there was clear information available concerning the ability of the property to be developed it could have accessed easily before the auction. The court also held that Red Brick, LLC could not rely upon the erroneous appraisal as the purpose of an appraisal in a foreclosure action was to establish a threshold for redemption of the party being foreclosed, not to provide a fair cash value of the property. The court also noted that Red Brick, LLC had provided no testimony that the appraisal was relied upon by its members, as no members had appeared at the evidentiary hearing to provide any testimony. As to Red Brick, LLC's claim of "constructive fraud" on the part of the court, LFUCG or the Master Commissioner in allowing the "erroneous" appraisal to induce a bidder to bid more than the value of the property, the court noted that Red Brick, LLC had provided no evidence that any of those entities had any knowledge of the restrictions on use of the property or any evidence that reliance, if any, on the appraisal was reasonable.

Red Brick, LLC then filed a CR 59.05 motion seeking to vacate the court's opinion and order. Red Brick, LLC attached an affidavit of one of its

---

[5] The information at the PVA for the properties indicates that the lots are not buildable. The PVA website contains a description of the lots as homeowners retention basin, open space, and greenway with a fair cash value of $0.

members to provide the evidence the court had noted was lacking in its order.  The

motion of Red Brick, LLC was denied.  This appeal followed.

## STANDARD OF REVIEW

The circuit court's decision on a motion to set aside the sale of a

foreclosed property through commissioner sale is reviewed for an abuse of

discretion.

> "[I]t is within the sound discretion of the circuit court to
> confirm or vacate a sale and that the court's exercise of
> that discretion will not be disturbed unless it appears to
> this court to have been abused in the judicial sense."
> *Gross v. Gross*, 350 S.W.2d 470, 471 (Ky. 1961).  "The
> test for abuse of discretion is whether the trial judge's
> decision was arbitrary, unreasonable, unfair, or
> unsupported by sound legal principles."  *Commonwealth
> v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

*Lerner v. Mortgage Electronic Registration Systems, Inc.*, 423 S.W.3d 772, 773

(Ky. App. 2014).

## ANALYSIS

Red Brick, LLC alleges that the Fayette Circuit Court abused its

discretion when it overruled its exceptions to the Master Commissioner sale and

denied relief on its motion pursuant to CR 59.05 to alter, amend, or vacate its

opinion and order.

*a. Exceptions*

First, Red Brick, LLC argues that the Fayette Circuit Court erred in not setting aside the sale pursuant to its exceptions because of the "grossly inflated appraisal." Red Brick, LLC incorrectly argues that the "master commissioner appraised the properties." This is not accurate. The statute clearly requires that the officer conducting the sale of foreclosed property appoint two persons to appraise the property:

> Before a sale of land, the officer shall have the land appraised, under oath, by two disinterested, intelligent housekeepers of the county, who may be sworn by him. If the appraisers disagree, the officer shall act as umpire. If a part of a tract only is sold, the part sold shall, after the sale, be revalued in like manner. The appraisal shall be in writing, signed by the persons making it, subject to inspection by the public prior to the sale, and returned with the execution. The officer shall refer to and explain the proceeding in his return on the execution, which return shall be recorded in full.

KRS 426.200(3).

Per the statute, the Master Commissioner appoints two "disinterested, intelligent housekeepers" to appraise the property and only becomes involved in the appraisal if the two appointees cannot agree. There is no indication in this case, and Red Brick, LLC has not so argued, that there was any disagreement. The Master Commissioner had nothing to do with the appraisal amount.

As the Master Commissioner testified and the trial court found, the Master Commissioner had no knowledge of the restrictions on the land, nor is it his responsibility to ensure that the appraisal amount is proper. In fact, the purpose of the appraisal is to set an amount by which the party foreclosed upon might seek to recover the property; if the sale does not net two-thirds of the appraised value, the foreclosed party has a right to redeem the property.

> If land sold under execution does not bring two-thirds of its appraised value, the defendant and his representatives may redeem it within six (6) months from the day of sale, by paying the purchaser or his representative the original purchase money and ten percent per annum interest thereon. The defendant redeeming his land shall take a receipt from the purchaser and lodge it with the clerk of the court, which receipt shall be filed and recorded with the execution under which the sale was made.

KRS 426.220(1).

As has long been recognized, the purpose of the appraisal is not to set a value of the property on which prospective bidders might rely.

> The existing statute provides that the officer *shall* cause the land to be valued *before* the sale. This valuation is for the benefit of the debtor, and to secure him in his legal right to redeem if the land does not bring two-thirds of its appraised value.

*Vallandigham v. Worthington*, 85 Ky. 83, 2 S.W. 772, 773 (1887).

As warned on the Fayette Master Commissioner's website for property sales, there are no promises or guarantees, and it is the bidder's

responsibility to conduct due diligence *prior* to the sale. Red Brick, LLC would have been wise to have engaged the appraiser whose testimony it presented at the evidentiary hearing *before* bidding on the property. To engage an appraiser only after the sale is akin to closing the barn door only after the horse has bolted.

Red Brick, LLC cites to *Elswick v. Justice*, wherein a mistake of fact was made when the appointed appraisers mistakenly believed that the lot to be sold contained only seventy or eighty acres when it actually contained more than twice either amount. 287 Ky. 632, 154 S.W.2d 714, 715 (1941). In setting aside the sale, the court noted that the exceptions were filed by Elswick, the foreclosed owner of the acreage, whose right of redemption was implicated by the error. "In the case before us the inadequate appraisement resulted from the mistake of the appraisers in valuing only part of the land to be sold, clearly a mistake of fact, which not only tended to affect the price received at the sale but also deprived appellants of their right of redemption." *Id.* at 715. In the present case, the exceptions were filed by Red Brick, LLC as third-party purchaser; therefore, their reliance upon *Elswick* is misplaced.

This precept is supported by more recent caselaw, as well. In *Burchett v. Bank Josephine*, from 1971, the state's highest court held:

> We are of the opinion that the purpose of an appraisal relates primarily to the right of redemption and not to the validity of the sale. In the event, after a hearing on the exceptions, the appraisal is found to have been irregular,

-10-

> fraudulent, or so erroneous as to be unconscionable, the trial court shall determine the true value of the property as of the date of the appraisal.

474 S.W.2d 66, 68 (Ky. 1971).

As Red Brick, LLC had no right to exclusively rely upon the appraisal amount in determining its bid, it cannot expect such exception to be held sufficient to undo the bargain. The trial court did not abuse its discretion and there was no error in overruling the exceptions.

### b. CR 59.05 motion

Red Brick, LLC also complains that the trial court abused its discretion in not granting its CR 59.05 motion to set aside its opinion and order. In the motion, Red Brick, LLC attempted to address the conclusion of the trial court that it had offered no evidence at the hearing to support a conclusion that it relied upon the appraisal in submitting the winning bid by attaching an affidavit of one of the members indicating that he did so rely. As LFUCG points out, by the time the affidavit was filed, proof was closed and LFUCG cannot cross-examine an affidavit.[6] The proper time to have presented such proof was at the hearing, which Red Brick, LLC failed to do.

---

[6] We decline to strike the affidavit from the record as requested by LFUCG. Per CR 12.06, a motion should have been filed for such relief within twenty (20) days of the filing of the affidavit. "Civil Rule 12.06 provides that a motion to strike shall be filed within twenty days after the service of a pleading. Appellee did not file its motion to strike until more than twenty days after the appellants had filed their answer and exceptions." *Stidham v. Commonwealth, Dep't of Transp., Bureau of Highways*, 579 S.W.2d 372, 373 (Ky. App. 1978).

The trial court noted the lack of proof that Red Brick, LLC even relied upon the appraisal. The original newspaper advertisement announcing the foreclosure sale, required by law, made no mention of the appraisal amount, a fact which the court noted in its opinion and order:

> The record contains no evidence that Red Brick was deceived or misled by the erroneous appraisal. If Red Brick purchased by [sic] the property based on the information contained in the print advertisement, it would not have had knowledge of the appraisal amount. Indeed, Red Brick made no mention of the appraisal amount in its initial exceptions filed June 7, 2021. That filing simply objected to continuation of the sale "on the basis that the property is not suitable for development." Given the absence of evidence, the Court has no basis for finding Red Brick was misled or deceived.

Red Brick, LLC also complains that "constructive fraud" occurred because of the appraisal on which it alleges it relied; Red Brick, LLC provided the trial court with no evidence that the concept of "constructive fraud" applies to Master Commissioner sales. Constructive fraud requires some breach of a legal duty owed to the party complaining. "Constructive fraud arises through some breach of a legal duty which, irrespective of moral guilt, the law would pronounce fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Wood v. Kirby*, 566 S.W.2d 751, 755 (Ky. 1978).

We hold the Master Commissioner had no specific legal duty he owed to Red Brick, LLC, other than to conduct the sale in accordance with the law. Red

-12-

Brick, LLC makes no allegation that the law was not followed, so this allegation must fail as well. The trial court did not abuse its discretion in overruling the CR 59.05 motion.

## CONCLUSION

We find that the trial court properly overruled both Red Brick, LLC's exceptions to the Master Commissioner's sale and the CR 59.05 motion. As the trial court pointed out in its opinion, such relief should be jealously granted and should not be granted when the party so moving failed to protect their own interests. "It is a salutary policy to engender and maintain confidence in the stability of sales made by a court. Such a sale ought not to be lightly disapproved where it was conducted in a fair and regular manner, and confirmation ought not to be refused except for substantial reasons." *Gross v. Gross*, 350 S.W.2d 470, 471 (Ky. 1961) (citations omitted). We affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

G. Michael Cain
Zachary A. Horn
Frankfort, Kentucky

BRIEF FOR APPELLEE
LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT:

Michael R. Sanner
Lexington, Kentucky